**Arlene ORKE, formerly Arlene Olson, Plaintiff and Appellant,**

v.

**Terry OLSON, Defendant and Appellee.**

**Civ. No. 11388.**

Supreme Court of North Dakota.

Aug. 20, 1987.

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff and appellant; argued by Donald L. Peterson.

John P. Brendel, Mohall, for defendant and appellee.

MESCHKE, Justice.

Custody of a four-year-old boy was changed from his mother to his father. On the mother's appeal, we conclude that there was no evidence to show that the child's best interests required a change in custody. Therefore, we reverse.

Arlene and Terry Olson married in December 1978 and divorced in September 1983. Custody of their child, Dustin, born March 28, 1982, was placed with Arlene.

Arlene married Larry Orke in February 1985, after living with him for about a year. Larry had three children, while Arlene had two children from prior marriages in addition to Dustin. Two of Larry's children had learning disabilities, as did one of Arlene's.

In November 1985, Terry married Bonnie, who had two children, and nine months later moved for custody of Dustin. After a short hearing, the trial court changed custody of Dustin from Arlene to Terry.

The written findings by the trial court were meager:

"That there has been a 'significant' or 'material' change in circumstances in the personal situation of the Defendant, Terry Olson, insofar as his ability to maintain the care, custody and control of the minor child, Dustin Lee Olson.

"That the current personal situation of the Defendant, Arlene Orke, formerly Arlene Olson, is unstable with regard to her ability to maintain the care, custody and control of the minor child, Dustin Lee Olson."

The trial court orally outlined the "significant change of circumstances proven":

"The life of Terry has been reformed. He has entered into a family life situation. The boy is older. And visitation overall has been exercised."

"[H]aving gotten by that threshhold question," the trial court remarked on the best interests of the child:

"Now I have looked at these guidelines ... and I find overall that it is sort of a dead heat there. You know, you both come out pretty well.
"....
"You both get high marks in these guidelines set out by law.
"....
"And the strongest factor going for Mrs. Orke, there has been a certain degree of permanency in this situation because she has had the child since the divorce and that is to be very—In child psychology the number one thing with the child is a feeling that he has a secure situation where he is at."

But, the trial court went on, audibly pondering the Orkes' "living situation":

"The other factor which I bring down in favor of Mr. Olson is that the situation which the Orkes are living in is not a too stable situation. It may be fine with them and they feel they are working it out just fine, but I don't feel that that has the desired effect on the child. And I think, I find from the testimony that the situation they are in does have an effect on the marriage and upon the child and that there has been because of this a certain amount of stress that would follow.

"It is very commendable that Mrs. Orke is working with these disabled children and is willing to assume this additional burden, and that is fine and I don't want to minimize that, but I think, however, from Dustin's standpoint there are a lot of problems in these two families and it would be better for him to be with the other family, and so I am going to find that it is in the best interest of Dustin that he live with his father."

Settled standards for changing custody were sketched in *Koller v. Koller*, 377 N.W.2d 130, 130–131 (N.D.1985):

"In *Ebertz v. Ebertz*, 338 N.W.2d 651 (N.D.1983), this court set forth the two issues a trial court must resolve in decid-

ing whether to grant or deny a motion to modify custody:

" 'This court distinguishes between the original award of custody and a decision to modify custody. *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981). When initially awarding custody, the trial judge determines the single issue of the child's best interests. Sec. 14–09–06.1, N.D.C.C. When modifying custody, the trial judge must determine two issues: whether or not there has been a significant change of circumstances since the original divorce decree and custody award and, if so, whether or not those changed circumstances are such that a change in custody fosters the best interests of the child. [Citations omitted.]

" '....

" 'The change of circumstances must not only be significant, but it must also indicate that modifying custody will promote the children's best interests.' 338 N.W.2d at 654–655.

"The burden of showing a change of circumstances which affects the best interests of the child and requires a change in custody is on the party seeking modification. *Lapp v. Lapp*, 336 N.W.2d 350 (N.D.1983). On appeal, this court will not set aside the trial court's determination unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. *Ebertz, supra; Lapp, supra.*"

Arlene relies on *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981), where we reversed an order changing custody of a child from the mother to the father four years after the original placement. We held that "[i]t is not enough for courts in a child-custody matter to make the bare assertion that it is in the best interests of a child that he or she should be in the custody of one or the other parent." *Id.* at 673.

Terry cites *Ebertz v. Ebertz*, 338 N.W.2d 651 (N.D.1983), where we affirmed a trial court decree changing custody of two children from the father to the mother. Although we felt that "more specific findings of fact would have been appropriate," *Id.* at 654, we concluded that the mother's improved marital and financial status was a significant change of circumstances. However, we further concluded that the change of custody was necessary for the children because their "cognitive, perceptive, and motor skills [were] below the expected levels" for their "normal intellectual abilities" after three years in the custody of their father. *Id.* at 653.

In this case, the father's evidence, as movant, can be summarized as follows: Terry testified that he had stopped drinking for several years and regularly attended church since remarrying, "so Dustin would have a father and not an alcoholic." In asking for custody of Dustin, Terry asserted:

"We can give him a much more wholesome and full life instead of jumping around from husband to husband, in the kind of life he has had in recent months and that his half brothers and sisters went through all their life. I don't want my son to go through that. I feel physically, emotionally and spiritually, in every way, he is better off with us."

Bonnie testified about her relationship with Terry, his with her two children, and her affection for Dustin. Mr. Strand, Bonnie's seasonal employer, testified that Bonnie and Terry were good parents, and that "it was always good for a son to be with his father." A friend, Olive Benson, testified Terry and Bonnie were good parents. Darcy, Bonnie's 12–year-old daughter, testified that she and her 11-year-old brother, Darren, liked and got along well with Dustin. Lee Franzen, who worked with Terry in Alcoholics Anonymous, and Carmen Olson, Terry's father, both testified about Terry's recovery from alcoholism.

The mother's evidence followed: Arlene testified that she lived "back and forth" between a home in Bottineau and one at the Orkes' farm. This arrangement came about, according to Arlene, because of problems between her oldest child and Larry's oldest child, each of whom had learning disabilities. Arlene declared that she and Larry "haven't had marital problems" and see each other every day. Dustin got along well with Larry, calling him "dad" as well as referring to Terry as "dad." Ar-

lene testified about her church participation and attendance with the children, and that she and Larry had taken several courses on parenting. For the first time in her life, Arlene said, she was able to spend full time at home without having to hold a wage-earning job outside the home. As a result, she is able to have more time with Dustin. She testified:

"Q Can you give Dustin the same material things that Terry can?

"A No, certainly not.

"Q What can you give him?

"A I give him my time. I love him. I take him to the library and swimming lessons. I take him fishing, take him camping. We walk. We bicycle together. We read together. He reads me stories."

Larry Orke confirmed that he and Arlene had "no problem" and were maintaining a family relationship, while living in separate households "for the sake of the children," as advised by a counselor. Larry testified, "I don't know of any better mother than [Arlene] is." He also testified that when Dustin returned from each visitation with Terry, Dustin was difficult and uncooperative with his mother.

Rev. Robert Solberg testified about Arlene joining and regularly attending his church and about her active participation in church activities, particularly her parental support of a youth group. Rev. Solberg gave Arlene "high marks" as a mother, based on his observations as well as his experience "counseling in the parenting area." He described the relationship of Larry and Arlene as "normal between husband and wife," even though they were living in separate households because of "tension" between their two oldest children with learning disabilities.

There was no rebuttal testimony. No opinion testimony, expert or otherwise, was submitted by either parent about Dustin's physical, mental or psychological development, or about any detrimental effect to him from living with his mother.

■ Terry's redemption as a parent may be a significant change of circumstances, but that only begins the inquiry, and the conclusion that "it would be better for [Dustin] to be with the other family" does not satisfactorily complete the inquiry. *Miller v. Miller, supra.* Consecutive determinations about custody cannot change custody back and forth as the scales settle slightly toward first one parent and then the other as their circumstances change. The concept cannot be so erratic. "We have recognized that it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between the parents." *Lapp v. Lapp*, 293 N.W.2d 121, 128 (N.D.1980). Before a change of custody can be deemed necessary for the best interests of the child, there must be some consideration of the effect of the change on the child. *See Silseth v. Levang*, 214 N.W.2d 361 (N.D. 1974) and *Jordana v. Corley*, 220 N.W.2d 515 (N.D.1974).

Thus, in *Miller v. Miller, supra,* we pointed out that "[t]he change of circumstances must weigh against the child's best interests before a change in custody is justified." 305 N.W.2d at 672. In *Miller*, the non-custodial parent had problems exercising visitation. This Court required that there be a "finding or conclusion that these problems had worked against [the child's] best interests." Since there was no such finding, those circumstances did not justify the change of custody. *Id.* at 672.

■ In this case, there is no evidence about how the custodial parent's remarriage and living apart from her husband actually affects the child. After observing that both parents were equally fit and that the child would do well in the custody of either, the trial court opted in favor of the "stability" of the non-custodial home, apparently only because of the uniqueness of the separate households maintained by the custodial parent and her husband. But, in so doing, the trial court failed to recognize that the important factor is not the "stability" in Arlene's relationship with her husband, but the stability of the child's relationship with the custodial parent, his mother. It is that continuous and uninterrupted relationship that has been important

to the child since the divorce. The potential of advantages to the child from a change must be weighed against uprooting the child from the established custodial arrangement. *Miller v. Miller*, 305 N.W.2d at 672. This record did not have evidence for the trial court to properly make that determination.

The burden is on the parent seeking change of custody to show not only a significant change of circumstances but also that the change of custody is required for the child's best interests. *Id.* There is no evidence that the welfare of Dustin is adversely or negatively affected by his custodial parent's unique living arrangement in a household apart from her husband's. Therefore, we conclude that the trial court's finding, that "it would be better for [Dustin] to be with the other family," is clearly erroneous.

We are left with a definite and firm conviction that a mistake has been made. A trial court should order a change of custody only for a compelling reason, not upon a finding that some marginal improvement in the child's life may occur.

Therefore, we reverse.

ERICKSTAD, C.J., and GIERKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring in the result.

I concur in the result reached in the majority opinion. Because a trial court's decision to modify child custody is subject on appeal to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. [e.g., *Ebertz v. Ebertz*, 338 N.W.2d 651 (N.D. 1983)], I do so reluctantly as is apparent from my statements in such cases as *Hanson v. Hanson*, 404 N.W.2d 460, 468 (N.D. 1987) [Vande Walle, J., concurring and dissenting], and *Paulson v. Meinke*, 389 N.W.2d 798, 803 (N.D.1986) [Vande Walle, J., dissenting]. Nor do I necessarily subscribe to all the statements contained in the majority opinion concerning what is required to change custody. Our law on that subject is established: Before a modification of custody is permitted there must be a significant change in circumstances and that change in circumstances must be such that a change in custody fosters the best interests of the child. *Ebertz, supra.* I believe there was a twofold significant change in circumstances, i.e., Terry's reversal of his status as an alcoholic and his remarriage and, perhaps more significant, Arlene's remarriage, which resulted in an apparently failed effort to bring two families together. If we could speculate, I would speculate that the trial judge made the correct decision and that the latter change in circumstances, when coupled with Terry's newfound stability, means that Dustin's best interests would be fostered by a change in custody from Arlene to Terry. However, there is little or no evidence in the record to support that speculation, i.e., to show that Dustin was affected by his mother's living arrangements and the stress which resulted therefrom. I therefore agree with the majority that the trial court's finding as to Dustin's best interests is not supported by the evidence.