**Penny STARKE, now known as Penny Dockter, Plaintiff and Appellant,**

v.

**Clinton STARKE, Defendant and Appellee.**

Civ. No. 890389CA.

Court of Appeals of North Dakota.

July 17, 1990.

Broden & Broden, Devils Lake, for plaintiff and appellant; argued by Douglas L. Broden.

Wegner, Fraase, Nordeng & Johnson, Fargo, for defendant and appellee; argued by Daylen D. Ramstad.

NEUMANN, District Judge.

Penny Dockter, formerly Penny Starke, appealed from an order changing the custody of her three minor children to their father, Clinton Starke. We reverse and remand for proceedings consistent with this opinion.

Penny and Clinton were divorced on December 15, 1983. Penny was granted custody of the couple's three minor children: Joshua, born on March 3, 1978; Tyler, born on July 12, 1980; and Megan, born on October 27, 1982. The original divorce decree granted Clinton reasonable visitation, and was amended on March 18, 1985, to further define Clinton's visitation rights.

Since the divorce decree was entered, both parties have remarried. Clinton married his present wife, Brenda, in 1985, and Penny married her present husband, James Dockter, in 1988. When the parties were

divorced, Clinton farmed near New Rockford. He quit farming in 1987 and moved to Cooperstown to work at a bank.

In January 1989 Joshua was diagnosed as having an ulcer. Joshua's treating physician was of the opinion that the ulcer was exacerbated by the stress of visitations with Clinton, and advised Penny to temporarily discontinue Clinton's visitation. Penny did so without obtaining permission from the court. On June 28, 1989, Clinton sought a contempt order against Penny. Clinton also moved to amend the judgment to seek physical custody of Joshua. After a hearing on July 10, 1989, the court found Penny in civil contempt but did not rule on Clinton's motion for change of custody. The court appointed a guardian ad litem to submit a report on custody.

On July 10, 1989, Penny moved for an order allowing her to change the residence of the children to Colorado, where her husband, James Dockter, had moved to seek better employment. On July 11, 1989, Clinton amended his motion and requested physical custody of all three of the parties' children. Clinton also stipulated to the change of residence of the children to Colorado in the event that the trial court did not grant his motion for a change of custody.

After a hearing the court made the following oral findings:

"There are some significant changes in this particular case, they are as follows: Both parents have remarried, Clinton with his present wife have two children of their own. Penny with her present husband is pregnant and will have a baby in late September or the first part of October. Clinton has changed his occupation from a farmer to a loan officer. The evidence shows that Clinton's life has become stable and that they are financially capable and able to care for the children. Penny is pregnant and moving to a new home in a different state. The evidence shows that these changes are significant and there is a need for a change in custody."

The court made the following written findings:

"III.

"Both parties have remarried since the divorce. Defendant and his wife, Brenda, live in Cooperstown and he is employed as a loan officer in a bank. Defendant and Brenda have two children of their own. They have a large home, and are financially capable and able to care for the parties' minor children. Defendant is well adjusted and his wife, Brenda is a loving and caring person to their two children and also to Clinton's three children.

"IV.

"That Plaintiff, Penny Dockter married Jim Dockter on December 21, 1988.

"V.

"That Jim Dockter is a carpenter. That Jim Dockter moved to Colorado and presently resides there due to better pay and better working conditions in Colorado.

"VI.

"That Plaintiff, Penny Dockter, is presently pregnant and is expecting a baby in late September or early October, 1989.

"VII.

"That the grandparents of the minor children of the parties all live in and around the New Rockford area. That the minor children of the parties are close to and have good relationships with both sets of grandparents.

"VIII.

"That the remarriage of both parties and Plaintiff's planned move to Colorado constitute significant changes in circumstances and there is a significant need for a change in custody in the best interests of the parties' minor children."

The court amended the judgment to give Clinton physical custody of the three children during the school year and Penny

physical custody of the children during the summer. Penny has appealed.

 Our Supreme Court distinguishes between an original award of custody and a decision to modify custody. *Orke v. Olson,* 411 N.W.2d 97 (N.D.1987). In an initial custody determination, the trial court determines the single issue of the best interests of the child. *Koller v. Koller,* 377 N.W.2d 130 (N.D.1985). In a custody modification proceeding, the trial court determines two issues: whether or not there has been a significant change in circumstances since the original custody award, and, if so, whether or not those changed circumstances are such that change in custody fosters the best interests of the child. *Id.* For purposes of finality, a prior decree should not be modified without a showing of a significant need for doing so. *Wright v. Wright,* 431 N.W.2d 301 (N.D.1988). A trial court should order a change of custody only for a compelling reason, not upon a finding that some marginal improvement in the child's life may occur. *Orke v. Olson, supra; Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980); *cf. In the Interest [Custody] of D.G.,* 246 N.W.2d 892 (N.D.1976). The burden of showing a significant change in circumstances and that the best interests of the child warrant a change in custody rests with the party seeking modification. *Mertz v. Mertz,* 439 N.W.2d 94 (N.D.1989).

 A trial court's decision to change custody will not be set aside unless it is clearly erroneous under Rule 52(a), N.D.R. Civ.P. *Mertz v. Mertz, supra.* A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law. *Id.*

Penny asserts that Clinton failed to establish a significant change in circumstances. She argues that the trial court's findings that the remarriage of both parties and Penny's planned move to Colorado constituted a significant change in circumstances were clearly erroneous.

Changed circumstances have been described as new facts which were unknown to the moving party at the time the original decree was entered. *Wright v. Wright,* 431 N.W.2d 301 (N.D.1988). In *Wright v. Wright, supra,* 431 N.W.2d at 304, the North Dakota Supreme Court said:

"When a custodial parent requests permission to change the residence of the children, a trial court should determine whether that parent will move regardless of the court's decision to allow the children to move. Only in the event a custodial parent will move without the children does that move constitute a change of circumstances for purposes of deciding a companion motion for change of custody."

 In this case, no evidence was presented to establish that Penny would have moved without the children if her request for change of residence was denied. Clinton had the burden of proof on this issue. Moreover, Clinton stipulated to the change of residence of the children to Colorado in the event that the trial court did not grant his motion for change of custody. Under these circumstances, we are definitely and firmly convinced that the trial court made a mistake in finding that Penny's planned move to Colorado was a significant change in circumstances. *See Wright v. Wright, supra.*

Although Clinton's remarriage and improved family life may demonstrate a change in circumstances, that does not end the inquiry. As the North Dakota Supreme Court said in *Orke v. Olson, supra,* 411 N.W.2d at 100:

"Consecutive determinations about custody cannot change custody back and forth as the scales settle slightly toward first one parent and then the other as their circumstances change. The concept cannot be so erratic. 'We have recognized that it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between the parents.' *Lapp v. Lapp,* 293 N.W.2d 121, 128 (N.D.1980). Before a change of custody can be deemed necessary for the best interests of the child, there must be some consideration of the effect of the change on the child. *See Silseth v. Levang,* 214 N.W.2d 361 (N.D.

1974) and *Jordana v. Corley,* 220 N.W.2d 515 (N.D.1974).

"Thus, in *Miller v. Miller,* [305 N.W.2d 666 (N.D.1981)], *supra,* we pointed out that '[t]he change of circumstances must weigh against the child's best interests before a change in custody is justified.' 305 N.W.2d at 672. In *Miller,* the noncustodial parent had problems exercising visitation. This Court required that there be a 'finding or conclusion that these problems had worked against [the child's] best interests.' Since there was no such finding, those circumstances did not justify the change of custody. *Id.* at 672."

In this case, subject to visitation, the children have been in Penny's custody since the parties' divorce in 1983. Clinton candidly admitted that Penny was a good parent and that she was largely responsible for the children's fine behavior. He also admitted that the children had developed a strong attachment to Penny. There was no evidence presented that living conditions provided by Penny were inadequate or that the children were being deprived of any necessities. The evidence also indicated that, with the exception of Joshua, the children were doing well in school. Joshua was held back one grade after he had missed too much school because of his ulcer. All three children testified in chambers that they preferred to live with Penny. A child's preference is one factor that may be considered in determining custody. *Novak v. Novak,* 441 N.W.2d 656 (N.D.1989); *Mertz v. Mertz, supra.*

Although the evidence may show a marginal improvement in the children's life because of Clinton's improved family life and stability, we believe the trial court's decision to change custody failed to recognize the continuous and uninterrupted relationship that has been important to the children since the divorce. *Orke v. Olson, supra.* The marginal advantages of a change in custody must be weighed against uprooting a child from an established custodial arrangement. *Id.* In this case we believe there were no compelling reasons for changing custody of the children, and we are left with a definite and firm conviction that the trial court made a mistake in changing custody.

We therefore reverse the judgment changing custody of the three minor children to Clinton and remand for proceedings consistent with this opinion and the parties' stipulation.

A.C. BAKKEN, Surrogate Judge and EVERETT NELS OLSON, District Judge, concur.