**Darian REEDE, Plaintiff and Appellee,**

v.

**Shirley STEEN, formerly known as Shirley Reede, Defendant and Appellant.**

**Civ. No. 900078.**

Supreme Court of North Dakota.

Oct. 2, 1990.

Freed, Dynes, Reichert & Buresh, PC, Dickinson, for defendant and appellant; argued by Eugene F. Buresh.

Howe, Hardy, Galloway & Maus Hettinger Office, Hettinger, for plaintiff and appellee; argued by Jeff Rotering.

ERICKSTAD, Chief Justice.

Shirley Steen, formerly Shirley Reede, appealed from the judgment of the District Court for Adams County modifying an original custody award by allowing Darian Reede custody of the parties minor child Katherine Reede. We affirm.

On February 28, 1983, Shirley and Darian were divorced at Rapid City, Pennington County, South Dakota. Relying upon an agreement entered into by the parties, the District Court for Pennington County granted to Shirley the care, custody, and control of Katherine.

On June 26, 1989, Darian commenced an action in the District Court for Adams County seeking a change in the original custody award. After determining that there had been a significant change in circumstances and that the best interests of Katherine would be served by a change in custody, the district court transferred custody to Darian. This appeal followed.

Following their divorce in 1983 Darian moved to Hettinger, North Dakota, while Shirley remained in Rapid City, South Dakota. Subsequent to the divorce, Shirley enrolled in the South Dakota National Guard and began studies at the Rapid City School of Mines and Technology. Katherine spent approximately 80 days with Darian in Hettinger during 1983, and approximately 100–120 days with Darian in Hettinger during 1984.

During 1985, Shirley continued to fulfill her commitments to both her studies and the South Dakota National Guard. As a result, Katherine was enrolled in kindergarten in Hettinger and spent approximately 214 days in the care of Darian during that year.

From January to late May 1986, Katherine completed kindergarten in Hettinger while living with Darian, thereafter she returned to Rapid City to live with Shirley. Katherine remained with Shirley in Rapid City only until late July, when she once again returned to Hettinger to live with Darian and subsequently enrolled in first grade. Katherine resided with Darian in Hettinger throughout the remainder of 1986, spending approximately 297 days in his care during that year.

Katherine completed first grade in Hettinger with Darian and returned to Rapid City in May of 1987. Katherine remained with Shirley in Rapid City for the rest of 1987 with the exception of a few visits with Darian in Hettinger. Katherine was enrolled in second grade in Rapid City. During 1987, Katherine spent approximately 146 days with Darian in Hettinger.

Katherine began 1988 in Rapid City with Shirley, where she completed second grade. Katherine spent the summer of 1988 with Darian, but returned to Rapid City to begin third grade in the fall of 1988. Katherine resided in Rapid City throughout the remainder of that school term, spending approximately 125 days with Darian during 1988.

Katherine completed third grade in Hettinger in 1989, spending the time from December 18, 1988, until late June of 1989 in Darian's care. In January of 1989, Shirley

moved to Santa Rosa, California. Subsequent to June 28, 1989, Katherine was under Shirley's care in Santa Rosa until the time of trial on January 29, 1990.

Before returning Katherine to Shirley on June 28, 1989, Darian commenced an action in the District Court for Adams County seeking a modification of the custody of Katherine. The district court determined that a significant change of circumstances had occurred and the interests of Katherine would best be served through a modification of the custody agreement, awarding custody of Katherine to Darian. Shirley appealed the district court's judgment, asserting that the trial court's determination that the best interests of Katherine would be served by a change in custody was clearly erroneous.

This Court has repeatedly set forth a two-step analysis to be applied when a party seeks the modification of a custody award. *E.g., Heinen v. Heinen,* 452 N.W.2d 331 (N.D.1990); *Mertz v. Mertz,* 439 N.W.2d 94 (N.D.1989); *Miller v. Miller,* 305 N.W.2d 666 (N.D.1981). First, the trial court must determine whether or not there has been a significant change in circumstances subsequent to the original divorce decree and custody award. *Heinen,* 452 N.W.2d at 333; *Anderson v. Anderson,* 448 N.W.2d 181, 182 (N.D.1989). Second, the trial court must determine whether or not the changes which have occurred are such that it would be in the best interests of the child to modify the original custody award. *Heinen,* 452 N.W.2d at 333; *Anderson,* 448 N.W.2d at 182. The party seeking the modification of the custody award has the burden of showing the existence of a change of circumstances which requires a change in custody. *Heinen,* 452 N.W.2d at 333; *Pitsenbarger v. Pitsenbarger,* 382 N.W.2d 662, 664 (N.D.1986).

The application of the "clearly erroneous" standard of review to child custody cases is well-settled. *Bader v. Bader,* 448 N.W.2d 187, 188 (N.D.1989); *Lapp v. Lapp,* 293 N.W.2d 121, 124 (N.D.1980). In *Lapp* we stated that "[a] trial court's deter-

minations on matters of child custody, child support, alimony, and the division of property are treated as findings of fact. The findings of the trial court will not be set aside on appeal unless they are clearly erroneous." [Citations omitted.] *Lapp,* 293 N.W.2d at 124–25. This rule has remained unchanged since our initial application of it to family law situations in *Ferguson v. Ferguson,* 202 N.W.2d 760, 763 (N.D.1972), and our initial application of it to child custody in *Silseth v. Levang,* 214 N.W.2d 361 (N.D.1974). In *Mertz,* we defined the clearly erroneous standard by stating the following:

> "The decision of the trier of fact will not be set aside unless it is clearly erroneous under Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law." [Citations omitted.]

*Mertz,* 439 N.W.2d at 96; *Accord Larson v. Larson,* 234 N.W.2d 861, 865 (N.D.1975); *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). We must also keep in mind that "[t]he mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court." *Larson,* 234 N.W.2d at 865 (quoting *Elmer,* 210 N.W.2d at 820).

■ Shirley does not seem to seriously contest the trial court's finding that there has been a significant change in circumstances. That being so, we shall devote most of our attention in this case to her contention that the trial court's finding that a modification of the custodial arrangement would be in the best interests of the minor child is clearly erroneous.

In determining whether or not the best interests of the child would be served, the trial court is to consider the factors outlined in section 14–09–06.2 of the North

Dakota Century Code.[1] *Lapp*, 293 N.W.2d at 125. It is not necessary for the trial court to make an express written finding as to each of the enumerated factors in the statute. *Id.* at 128; *Mertz*, 439 N.W.2d at 96. The trial court concluded that factors (a), (b), (c), (f), (g), (h), (i), (j), and (k) weighed equally. In considering factor (d), the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity, the court found in favor of Darian. The court supported this conclusion with evidence which indicated that Katherine had often been left alone while residing with Shirley. In considering factor (e), the permanence, as a family unit, of the existing or proposed custodial home, the court also found in favor of Darian. Finally, under consideration of other relevant factors as allowed under factor (*l*), the court found the following:

"With regard to this factor, the Defendant has denied reasonable phone access to the minor child, the Defendant listens in on conversations between the minor child and the Plaintiff, the Defendant has denied written communication between the Plaintiff and the minor child, the current husband of the Defendant has been verbally abusive to the Plaintiff and his wife, and the Defendant has not kept the Plaintiff informed of the status of the minor child. All of these factors are detrimental to the best interests of the minor child."

Shirley asserts that the trial court erred in weighing factor (d) in Darian's favor by finding that Katherine was often left alone and forced to find her own way to and from school. Shirley argues and so testified that she had made arrangements for transportation with her landlord, Sheryl Slagle, who had a child similar in age to Katherine. Contradictory evidence was provided by Susan Plambeck, a neighbor of Shirley's who shared the transportation duties with Sheryl Slagle. Susan Plambeck said that no such transportation arrangements had been made and that Katherine was often left alone before and after school. It is for the trial court to determine whether or not an arrangement for Katherine's transportation to and from school and care after

---

1. See section 14–09–06.2, N.D.C.C., which reads: "1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:
    a. The love, affection, and other emotional ties existing between the parents and child.
    b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.
    c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
    d. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
    e. The permanence, as a family unit, of the existing or proposed custodial home.
    f. The moral fitness of the parents.
    g. The mental and physical health of the parents.
    h. The home, school, and community record of the child.
    i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
    j. The existence of domestic violence. If the court finds that domestic violence has occurred, the court shall provide for a custody arrangement that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm. As used in this subdivision, 'domestic violence' means domestic violence as defined in section 14–07.1–01.
    k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.
    *l.* Any other factors considered by the court to be relevant to a particular child custody dispute.
    "2. In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

school had been made, as the trial court is in the best position to determine the credibility of the witnesses by hearing and observing them. *Ebertz v. Ebertz*, 338 N.W.2d 651, 654 (N.D.1983); *Lapp v. Lapp*, 336 N.W.2d 350, 353 (N.D.1983) (citing *Lapp*, 293 N.W.2d at 129). In discussing our review when governed by the "clearly erroneous" standard we have stated:

> "We give due regard to the trial court's opportunity to judge the credibility of the witnesses and simply because we may have viewed the evidence differently if we had been the initial trier of the case, does not entitle us to reverse the lower court."

*Zajac v. Great American Ins. Companies*, 410 N.W.2d 155, 157 (N.D.1987). In this light we are not convinced the trial court's determination of factor (d) was a mistake.

Shirley also contends that the number of moves of the child when in Shirley's care were necessitated by her "dire" financial situation resulting from Darian's failure to provide child support payments. Because of this, Shirley contends that the trial court erred in allowing the evidence of the numerous moves to weigh factor (d) in Darian's favor. In considering Shirley's financial condition when analyzing the number of moves, the trial court said: "many of these moves were not caused by poor financial reasons, and I also find that Steen has left Katie at home alone before and after school, forcing Katie to find her own way to and from school." Upon review of this evidence, we are not convinced that the trial court erred in weighing factor (d) in Darian's favor.

Shirley further contends that the trial court improperly considered her past conduct and failed to consider her proposed custodial home in weighing factor (e) in Darian's favor. Shirley asserts that she has resolved her past difficulties and the trial court should consider her current successful marriage and positive employment situation in weighing factor (e). The trial court found that Darian had previously provided a stable home environment and appeared to be committed to continuing to

provide a stable home. The trial court considered Shirley's past failure to provide a permanent family unit for Katherine, and did recognize the possibility that Shirley may now be able to provide a stable, permanent family unit for Katherine. However, in evaluating all of the evidence, including past conduct, the court concluded that this factor weighed in favor of Darian. Although it is impossible to be certain what might occur in the future, any prediction of the future requires some reflection into the past conduct of the parties. Upon review of this evidence, we also are not convinced that the trial court made a mistake in weighing factor (e) in Darian's favor.

Shirley also contests the trial court's findings of fact concerning factor (*l*) of section 14–09–06.2, N.D.C.C., which allows the court to consider any other relevant factors. In weighing factor (*l*) in Darian's favor, the court considered Shirley's possible past denial of telephone contact between Darian and Katherine, the denial of written communication between Darian and Katherine, verbally abusive conversations between Darian and Shirley's present husband, and the reluctance of Shirley to inform Darian of Katherine's status. As the trial court made findings that these things did, in essence, occur and that they have a bearing on Katherine's best interests, and the evidence in the record supports these findings, we are not convinced a mistake has been made relative to factor (*l*) and thus we conclude that those findings are not clearly erroneous.

■ This Court has often recognized the inherent dangers associated with changing custody from the custodial parent to the non-custodial parent. *E.g. Orke v. Olson*, 411 N.W.2d 97 (N.D.1987). In *Orke* we said:

> "Consecutive determinations about custody cannot change custody back and forth as the scales settle slightly toward first one parent and then the other as their circumstances change. The concept cannot be so erratic. 'We have recognized that it is not in the best interests of a child to unnecessarily change custody

and bandy the child back and forth between the parents.' "
*Orke,* 411 N.W.2d at 100 (quoting *Lapp v. Lapp,* 293 N.W.2d 121, 128 (N.D.1980)). Thus, we have been reluctant to affirm a change in custody which has been granted merely on the basis that the non-custodial parent's situation has improved. *Orke,* 411 N.W.2d at 100; *Miller,* 305 N.W.2d at 672. Instead, the burden is on the parent seeking a change in custody to show both a significant change in circumstances and reasons why a change in custody is required for the child's best interests. *Orke,* 411 N.W.2d at 101.

In *Orke,* the non-custodial parent sought a change in custody on the grounds that his life had significantly improved and that his child would therefore be better off in his care. *Id.* at 100. The non-custodial parent failed to present any evidence that the child was being adversely or negatively affected by the established custody arrangement. *Id.* at 101. We held the findings of the trial court to be clearly erroneous because the non-custodial parent provided only evidence of a change in circumstances. *Id.* at 100. This "only begins the inquiry" and a change in custody will only be granted if the non-custodial parent also shows that a change of custody is required for the child's best interests. *Id.; Miller,* 305 N.W.2d at 672.

In the case at hand, neither party questions that there has been a change in circumstances. Additionally, the trial court found that Katherine had often been left alone while in the care of Shirley and that communications between Katherine and Darian had been disrupted and denied by Shirley. The trial court was entitled to consider these facts as evidence that Katherine was being adversely affected in the established custody arrangement.

In summary, in determining whether or not the trial court's findings were clearly erroneous as they relate to granting the change in custody, we must consider the evidence in its entirety. *Bader,* 448 N.W.2d at 188. In order to conclude that the findings of the trial court were clearly erroneous we must be left with a definite and firm conviction that a mistake has been made. *Id.* After finding a significant change in the circumstances subsequent to the initial award of custody and after applying the best interests of the child factors, which are set forth in section 14–09–06.2 of the North Dakota Century Code, the trial court determined that it would be in the best interests of Katherine to grant a modification of custody. Upon review of the entire evidence we are not left with a definite and firm conviction that a mistake has been made. Accordingly, we decline to set aside the trial court's placement of custody of Katherine with Darian.

We affirm the judgment with costs on appeal to Darian.

VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

LEVINE, J., concurs in the result.