Shawna L. Winn DELZER,
Plaintiff and Appellee,

v.

Timothy L. WINN, Defendant
and Appellant.

Civ. No. 920057.

Supreme Court of North Dakota.

Nov. 5, 1992.

H.I. King (argued), Aberdeen, S.D. and Keith A. Wolberg, Bismarck, for plaintiff and appellee.

Wefald Law Office, Ltd., Bismarck, for defendant and appellant; argued by Robert O. Wefald.

ERICKSTAD, Chief Justice.

Timothy Winn appeals from a judgment of the district court changing custody of his two children, Ryan and Sarah Winn, to their mother, Shawna Delzer, formerly Shawna Winn. We reverse.

Shawna and Timothy were married in Beulah, North Dakota, on August 11, 1984. They had two children during their marriage, Ryan and Sarah. They were divorced on January 15, 1990. Following a contested custody hearing, Timothy was awarded custody of the two children, who were of the ages of four years and one and one-half years at that time. Timothy maintained custody of Ryan and Sarah until March 1, 1992, when the district court ordered Timothy to relinquish custody of the two children to Shawna.

During the modification hearing, Shawna conceded that she had experienced personal problems at the time of the original award of custody. She said that at that point in her life she was immature, angry, misguided, and lacked direction. Subsequent to her divorce she moved to Eureka, South Dakota, married Rick Delzer whom she met in church in Bismarck while separated, but not divorced, from Timothy, bought a house with Delzer, and was in the process of completing her nursing degree. Upon receiving her degree, she will be employed by a nursing home in Eureka, three blocks from her home. Her life, according to Shawna, had taken a considerable turn for the better, apparently, now that she was living with a less domineering and more loving person.

This change was instrumental in prompting Shawna to petition the district court for a modification in custody. Shawna asserted that she would be better able to provide a fitting home for her two children than

Timothy. She pointed out that she would not be working as many hours as Timothy, so she would have more time to devote to Ryan and Sarah. However, the children would still have to be cared for by someone else during Shawna's eight hour shifts at the nursing home. Shawna showed intense concern over the fact that Ryan and Sarah were taken to Timothy's sister's home for care during the nine or ten hours he was at work. Shawna contended that it was Timothy's sister who was raising the children, not Timothy. Additionally, Shawna urged the district court that she would provide the children with better educational instruction, religious training and medical care.

Shawna contended that Timothy had not discerned that Sarah had ringworm, which Shawna discovered while bathing Sarah. When treated with Tinactin, the ringworm disappeared, only to reoccur on Sarah's temple and be successfully treated on a weekend with Shawna. Shawna also contended that Sarah, on one visit, had not bathed for three days because she refused to take a bath. This, Shawna contended, was because Sarah's feet, which Shawna discovered were blistered, hurt Sarah. After an examination by Dr. Susan Ostrowski of Eureka, and after receiving about four different prescriptions for a fungus, plus an antibiotic, the condition was apparently alleviated. It became necessary also to purchase canvas shoes in lieu of plastic shoes and take other precautionary measures to prevent a reoccurrence. Shawna also found it necessary to take Sarah to the doctor because of a bronchial infection, and she apparently monitored Ryan for his allergies.

Shawna's testimony reflected that her concern went beyond the children's physical health; she was troubled about their mental, emotional and educational well-being as well. Shawna asserted that Ryan

might now be dominating Sarah as Timothy had allegedly dominated her during their marriage. Shawna, to aid Ryan in his studies, worked with him on connecting lines in a book of mazes.

All these and other things that Shawna has done for the children are laudable, but hardly something unusual for a loving parent. Further, these actions are what she could continue to do as a non-custodial parent with weekend visitation privileges.

Despite the changes in Shawna's life, very little changed in the custodial parent's life from the time of the divorce to the modification hearing. Timothy remained employed at the coal-gasification plant in Beulah. At the time of the hearing, his sister cared for the children while he was at work, just as she had always done. He had not remarried. He frequently took the children to see both pairs of grandparents, who lived in close proximity to the children and Timothy. Although not a perfect father, he tended to his children's emotional, physical and mental needs to the best of his ability. Ryan and Sarah appeared to be progressing and developing at a normal rate for children their age, and seemed to be happy with their father.[1]

Upon consideration of the evidence, the district court found that the change in Shawna's life equated a significant change in circumstances.

"The court finds changed circumstances here.

".... She is now stable, mature, responsible and employed. The absence of those attributes two years ago at the time of the divorce had great effect on the court in granting custody to the father. Her changed circumstances have resulted in a more balanced or level field between the parents. Where before the court had doubts as to the mother's ca-

---

1. As mentioned above, during trial Shawna testified that she had some concern about the attention Timothy gave to the children's physical and educational well-being. Shawna's husband, Rick Delzer, agreed with Shawna. Shawna did not, however, assert that Timothy was a "bad father" to her children, or that they were unhappy in their present situation.

Several other witnesses, including Timothy, his sister, his mother, and Shawna's mother, disagreed with Shawna's assessment of Timothy's care of Ryan and Sarah. They observed that the children were pleasant, happy, and well-adjusted. They all testified that the children were healthy and progressing intellectually at a normal rate.

pacity to care for the children as a custodial parent, those doubts are now resolved favorably to her."

Furthermore, the court went on to find that the best interests of the children would be met by allowing the children to reside with Shawna.

"The court finds more growth potential for the children with the mother than has been demonstrated by the father these past two years. Rearing and nurturing are more than bathing, feeding and clothing. He has performed the latter functions adequately. However, the court finds the mother can excel in the former. The court has been markedly impressed by the mother's efforts, in spite of the distance, to remain intimately involved in and providing the nurturing of these children. A strong emotional bond exists."

Based on these findings, the district court changed custody from Timothy to Shawna, allowing Shawna's previous visitation schedule to become Timothy's. Timothy appeals this decision to our Court. For the reasons that follow, we reverse the district court's judgment, and order that custody of Ryan and Sarah be returned to their father, Timothy.

■ A court's analysis in considering a motion to modify custody should be different from that used when awarding original custody. *Orke v. Olson,* 411 N.W.2d 97, 99 (N.D.1987); *Miller v. Miller,* 305 N.W.2d 666, 671 (N.D.1981). The single issue determined during the original award of custody is the child's best interests. Section 14–09–06.1, N.D.C.C. *See also Starke v. Starke,* 458 N.W.2d 758, 760 (N.D.App. 1990); *Orke,* 411 N.W.2d at 99; *Koller v. Koller,* 377 N.W.2d 130 (N.D.1985); *Ebertz v. Ebertz,* 338 N.W.2d 651, 654 (N.D.1983); *Miller,* 305 N.W.2d at 671. However, when a motion for modification is before a trial court, it must consider two things:

"First, the trial court must determine whether or not there has been a significant change in circumstances subsequent to the original divorce decree and custody award. *Heinen [v. Heinen],* 452 N.W.2d [331] at 333; *Anderson v. Anderson,* 448 N.W.2d 181, 182 (N.D. 1989). Second, the trial court must de-

termine whether or not the changes which have occurred are such that it would be in the best interests of the child to modify the original custody award. *Heinen,* 452 N.W.2d at 333; *Anderson,* 448 N.W.2d at 182."

*Reede v. Steen,* 461 N.W.2d 438, 440 (N.D. 1990). *See also Orke,* 411 N.W.2d at 99; *Koller,* 377 N.W.2d at 130; *Ebertz,* 338 N.W.2d at 654; *Miller,* 305 N.W.2d at 671, *Silseth v. Levang,* 214 N.W.2d 361, 364 (N.D.1974).

■ The burden of proving the substantial change, and usually its accompanying detrimental effect on the child's best interests, falls on the party seeking the modification of custody. This principle is deeply entrenched in child custody cases.

"The party seeking the modification of the custody award has the burden of showing the existence of a change of circumstances which requires a change in custody. *Heinen,* 452 N.W.2d at 333; *Pitsenbarger v. Pitsenbarger,* 382 N.W.2d 662, 664 (N.D.1986)."

*Reede,* 461 N.W.2d at 440. Thus, in the present case, Shawna has the burden of proving a significant change of circumstances *requiring* a change of custody.

■ Here, Shawna contends that the changes in her life are so good that she should now, after the passage of over two years, be given custody. That is not the usual basis for gaining a change in custody. Notwithstanding that fact we must apply the usual standard of review.

"The application of the 'clearly erroneous' standard of review to child custody cases is well-settled. *Bader v. Bader,* 448 N.W.2d 187, 188 (N.D.1989); *Lapp v. Lapp,* 293 N.W.2d 121, 124 (N.D.1980). In *Lapp* we stated that '[a] trial court's determinations on matters of child custody, child support, alimony, and the division of property are treated as findings of fact. The findings of the trial court will not be set aside on appeal unless they are clearly erroneous.' [Citations omitted.] *Lapp,* 293 N.W.2d at 124–25."

*Reede,* 461 N.W.2d at 440.

This Court will not reverse the trial court on its findings of fact unless those findings

are clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. To find a Rule 52(a) error, we must be "left with a definite and firm conviction that a mistake has been made." *Miller*, 305 N.W.2d at 671. *See also Gross v. Gross*, 287 N.W.2d 457, 459–60 (N.D.1979).

Significantly, in a very recent case, we noted that "[t]here is an 'aversion' to changing the custody of a happy child who has been living with one parent for a substantial time." *Blotske v. Leidholm*, 487 N.W.2d 607, 612 (N.D.1992) (Erickstad, C.J., and VandeWalle, J., specially concurring). Maintaining stability and continuity in the child's life is a very compelling consideration when determining child custody issues. This is especially true when modification of custody is sought. "In a modification proceeding, the best interests of the child must be gauged against the backdrop of the stability of the child's relationship with the custodial parent." *Blotske*, 487 N.W.2d at 610.

In the case on appeal, prior to the modification of custody, Ryan and Sarah lived with their father for approximately two years. They had a stable environment. The record reflects that they were accustomed to the routine of their lives with Timothy. This continuity should not simply be discarded or interrupted merely because their mother has now improved her life and may be able to give them moderately better surroundings.

When considering a modification of custody, a substantial change of circumstances is not enough to warrant a change in custody. In addition, "[t]he significant change in circumstances must *so adversely affect the child* that custody should be changed." *Blotske*, 487 N.W.2d at 609 (emphasis added). *See also Gould v. Miller* 488 N.W.2d 42 (N.D.1992).

We have said:

"Consecutive determinations about custody cannot change custody back and forth as the scales settle slightly toward first one parent and then the other as their circumstances change. The concept cannot be so erratic. 'We have recognized that it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between the parents.' *Lapp v. Lapp*, 293 N.W.2d 121, 128 (N.D.1980). Before a change of custody can be deemed necessary for the best interests of the child, there must be some consideration of the effect of the change on the child. *See Silseth v. Levang*, 214 N.W.2d 361 (N.D. 1974) and *Jordana v. Corley*, 220 N.W.2d 515 (N.D.1974)."

*Orke*, 411 N.W.2d at 100.

This is not the first time we have faced a situation where the non-custodial parent has rehabilitated his or her life and sought modification of custody based, at least partially, on those improved personal circumstances. In the past, we have not been persuaded that this alone is sufficient to upset the continuity and stability of the child's life. We normally insist that the change in circumstances weigh against the best interests of the child before we will approve a change in custody.

The most recent case involving facts similar to the above is *Blotske*, 487 N.W.2d 607. The custodial parent in *Blotske* was the mother. The father moved for a modification in custody, citing his improved personal circumstances as justification for a change in custody. The district court modified custody in favor of the father, and we reversed. The district court was convinced that the father had a greater capacity and disposition for giving love, affection and guidance to the child. Yet, it also found that the child was normal, did well in school, and loved her mother. In reversing the district court, Justice Levine, speaking for this Court, said:

"[w]hile [the father's] love and disposition for affection may exceed [the mother's], nonetheless, according to the trial court, '[n]othing in the evidence suggests that [the mother] lacks the ability to fulfill her parental role'; that '[the mother] is presently providing' [the child] with 'food, clothing, medical care, and other material needs' and 'that there is no substantial evidence that [the mother] is not presently carrying out her parental responsibilities in an appropriate manner.'

If this were an original custody proceeding, the finding in favor of [the father] would be well within the trial court's prerogative. But this is a change of custody proceeding. Accordingly, we are left with a definite and firm conviction that the trial court made a mistake."

*Blotske*, 487 N.W.2d at 611.

The facts in the present case are very similar to those in *Blotske*. Shawna, in her new life, was found by the district court to exceed Timothy in her disposition and potential to nurture and educate the children. However, the court did not find Timothy incapable or unable to perform his parental functions adequately. In ordering the change in custody, the district court found that the positive changes in Shawna's life "resulted in a more balanced or level field between the parents." Timothy had not experienced negative changes in his ability to parent since the time of the original custody award, nor did the changes which occurred in Shawna's life weigh against the best interests of the children. The change was that Shawna's life had improved. This did not change the stable relationship between the custodial parent, Timothy, and the children, nor should it.

In *Orke*, 411 N.W.2d 97, where the father had improved his own life circumstances, we pointed out that the non-custodial parent's redemption was not sufficient to change custody and disrupt the stable relationship between the child and the custodial parent. Further, we said that just because the child might have a better life with the recently reformed non-custodial parent, the issue was not resolved by that determination alone.

"[The father's] redemption as a parent may be a significant change of circumstances, but that only begins the inquiry, and the conclusion that 'it would be better for [the child] to be with the other family' does not satisfactorily complete the inquiry. *Miller v. Miller, supra.*
. . .

"Thus, in *Miller v. Miller, supra*, we pointed out that '[t]he change of circumstances must weigh *against* the child's

best interests before a change in custody is justified.' 305 N.W.2d at 672."
*Orke*, 411 N.W.2d at 100 (emphasis added). *See also Starke*, 458 N.W.2d at 761 ("[a]l-though the evidence may show a marginal improvement in the children's life because of [the father's] improved family life and stability, we believe the trial court's decision to change custody failed to recognize the continuous and uninterrupted relationship that has been important to the children since the divorce").

Perhaps the case most similar in facts to the instant case is that of *Ludwig v. Burchill*, 481 N.W.2d 464 (N.D.1992). In *Ludwig*, custody was awarded to the father following the divorce. The child, as in this case, lived with his father for approximately two years prior to the modification hearing. The child was exposed to his extended family quite frequently, including extensive contact with his father's sister, just as in this case. The mother did not have extended family to offer the children, much like Shawna's situation. The district court noted that the father was not a perfect father, and that the mother's circumstances had improved since the time of the original custody award. However, it refused to modify custody, citing the importance of maintaining continuity for the child. We agreed with the district court that the change in circumstances did not require a change of custody, and that nothing weighed against the child's interests by maintaining the current custody arrangement. *Id.* at 469. *See also Silseth*, 214 N.W.2d at 364 (although mother had improved her life circumstances, a change of custody from father to mother was not warranted because father was not an unfit parent, and also, the best interests of the child did not require a change in custody).

It is true that in *Von Bank v. Von Bank*, 443 N.W.2d 618 (N.D.1989), this Court affirmed a change in custody based on a change of circumstances weighing against the best interest of the child. We believe that case is distinguishable on its facts. In *Von Bank*, the child suffered many health problems, somewhat similar to the present case. However, the mother, the custodial parent, had knowledge of the

illnesses and would not seek treatment for the child until the child was in severe pain. Here, once Timothy became aware of any illnesses his children had, he appeared to attend to the situation adequately.

Also in *Von Bank*, the child was exposed to events in her home life that Timothy's children did not experience. For instance, in *Von Bank*, the mother and child shared the same bedroom in which they each had their own bed. Yet, the mother would allow her fiancé to sleep in bed with her while the child slept in her own bed.

Furthermore, the custodial parent in *Von Bank* attempted to frustrate the non-custodial parent's visitation. In fact, the trial court found that the custodial parent was attempting to frustrate the entire child/parent relationship between the child and the father. Additionally, the mother's fiancé insisted he did not want the father to come to the fiancé's farm to pick up the child for visitation. In the present facts, Timothy appears to have been very cooperative and open to Shawna's visitation. She was able to exercise her visitation liberally.

Also, unlike Timothy, the custodial parent in *Von Bank* was making substantial changes in her life. The trial court did not view the changes positively. She was engaged to be married. After the marriage she intended to move her and the child onto her husband's farm. The trial court did not look favorably on the child moving to an isolated rural Minnesota area, given the child's emotional and mental state.

Most importantly, while in the custodial parent's care, the child in *Von Bank* was evaluated as showing signs of depression and social isolation. Quite the contrary is true in the present case. Both Ryan and Sarah were assessed as being normal, healthy children with no significant or major problems.

Both the district court and Shawna believe that changing custody would improve the children's lives. Shawna has redeemed herself and is now ready, willing and able to step in and take custody of her two children. In our view, Shawna and the district court have failed to give sufficient importance to the fact that Timothy has apparently been doing reasonably well in raising these two children for over two years. He is not deficient in his parenting. He is not unfit. The improved circumstances in Shawna's life do not lessen the good relationship Timothy has with Ryan and Sarah. That relationship has remained constant. The changed circumstances may enhance Shawna's relationship with the children, but that alone does not justify a change in custody.[2]

If the district court had found evidence that the relationship between Timothy and his children was negatively affecting the best interests of the children, then the change in custody might have been required. That was the situation in *Ebertz*, 338 N.W.2d 651. There we found that the mother's improved financial and marital status equated a significant change of circumstances. However, that alone was not enough to change custody in her favor. Additionally, in *Ebertz* we placed significant importance on the fact that the chil-

---

**2.** It has been brought to our attention that other cases on which we rely in this opinion do not involve expert testimony, but in this case there was expert testimony. Dr. Robert Patterson, a psychologist and counselor, testified as a witness for Shawna. This distinction is without a difference because in the present case the expert only examined Shawna, her new husband Rick Delzer, and the two children. Dr. Patterson did not evaluate Timothy. Furthermore, in his evaluation, Dr. Patterson did not conclude that the children had suffered detrimentally in their development while in their father's custody. Dr. Patterson observed that there was a very strong bond between Shawna and both children. He also testified that early in Shawna's relationship with Rick Delzer she had difficulty dealing with anger, but she learned how to deal with these emotions. Dr. Patterson also found that Rick Delzer had a good relationship with Shawna's children. The doctor agreed that often times when there is a change in custody, children may experience traumatic problems. However, he thought the occurrences of such problems in this case were less likely because of Shawna's previous frequent visitation.

All of these observations by Dr. Patterson reflect very favorably on Shawna and her positive changes in life. However, the doctor's evaluation of the children, while in their father's custody, lead him to conclude that the children were "pretty normal children," and that "there didn't appear to be any major problems with either child."

dren's "cognitive, perceptive, and motor skills [were] below the expected levels" due to " 'a lack of usual stimulation' available to children" while in their father's custody. *Id.* at 653–654. These facts weighed against the children's best interests, requiring a change in custody. *Id.* at 654.

There are no such facts in the present case. Nothing in the record illustrates to this Court that maintaining custody with the father, while the mother has liberal visitation privileges which she exercises, apparently without resistance, would weigh against the best interests of the children.[3] Although it is arguable that the children might experience marginal improvements in their lives if custody were given to their mother, this alone does not justify "bandying" these two children back and forth between the parents. The memorandum findings are too anemic and the record too lacking in substantive specifics to justify the change in custody from one parent to another. *See Blotske v. Leidholm,* 487 N.W.2d 607.

For the foregoing reasons, partly because we believe the district court had an erroneous view of the law and partly because we are convinced a mistake was made in determining the pertinent facts and applying them to the law which is crucial when determining whether or not a change in custody should be made, we reverse the judgment of the district court and return custody of Ryan and Sarah to Timothy, with visitation privileges to Shawna on the basis of the judgment previously existing.

VANDE WALLE, J., concurs.

LEVINE, Justice, specially concurring.

I agree that there is an "aversion" to changing the custody of a happy child who has spent a substantial time with the custodial parent. Translated into evidentiary language, there is a presumption in favor of maintaining the custody of a happy child with the custodial parent. This presumption is based largely on the socially desirable policy of maintaining the continuity of primary parental care as well as the equally desirable policy of maintaining some semblance of finality of custody judgments. "A party against whom a presumption is directed has the burden of proving that the nonexistence of the presumed fact is more probable than its existence." NDREv 301. Here, I believe Ms. Delzer has failed to fulfill her burden.

I concurred in the result in *Von Bank v. Von Bank,* 443 N.W.2d 618 (N.D.1989), because I concluded that there was some evidence in support of the fact finder's concern over the adverse consequences to the child's emotional health because of the custodial mother's planned move to an isolated rural area. In retrospect, I wish I had dissented in *Von Bank,* because I believe it was a close case and we ought to resolve close cases in favor of continuing the custody with the custodial parent in order to protect the desired continuity of care as well as the desired predictability of and requiem from litigation arising from custody judgments.

However, I agree that the present case is distinguishable from *Von Bank.* Most importantly, here, the significant changes in circumstances are not changes in the custodial parent's circumstances at all. Instead, there are significant changes in the noncustodial parent's circumstances. While these significant changes are not "marginal," as they were in *Orke v. Olson,* 411 N.W.2d 97 (N.D.1987), but are major, material improvements in the noncustodial parent's personality, emotional health and maturity,

---

3. The district court's memorandum opinion contained a statement that "[t]he court finds that, for whatever reason, the father has treated the children unequally solely because of their sex difference. Such conduct does not promote the children's best interests and is detrimental. The mother has not demonstrated such conduct." The only possible evidence of that, and the evidence referred to by counsel for Shawna when questioned about this statement, was that Timothy apparently took Ryan on a motorcycle ride one weekend afternoon while leaving Sarah with Timothy's mother at her home. Timothy testified that the motorcycle ride did not last more than one-half hour. But assuming it lasted for the weekend, we believe that can be justified on the basis of the difference in age, not sex, of the two children considering Ryan was 5 or 6 and Sarah was 2 or 3, hardly a recommended age for such an activity.

neither do these changes adversely affect the best interests of the children. *Gould v. Miller,* 488 N.W.2d 42 (N.D.1992). So the question is whether, given the substantial changes in circumstances of the noncustodial parent, a change in custody is required or compelled for the children's best interests. And I use the words "required or compelled" advisedly. The trial court thought that the children's best interests "[would] be met" by their residing with their mother. But, this is not an original custody proceeding and more is required of the fact finder than simply to find that a material change in circumstances justifies a change in custody to "meet" the children's best interests. *Blotske v. Leidholm,* 487 N.W.2d 607 (N.D.1992). That is why I believe the trial court erred in changing custody. Aside from the minor maladies described in the majority opinion, the record does not suggest that the children here were languishing in their custodial parent's care. *Compare Ebertz v. Ebertz,* 338 N.W.2d 651 (N.D.1983). There is nothing to indicate that these children were anything but happy, well-adjusted and secure in their present custodial arrangement. *See Blotske v. Leidholm, supra.*

The trial court found that the father was not promoting the best interests of the children because he "treated them unequally solely because of their sex difference." That finding was based exclusively upon evidence that the father took his six-year-old son for a motorcycle ride, but neglected to do the same for his two-year-old daughter. Viewed in its most favorable light, I believe the evidence is insufficient as a matter of law to support that finding.

The trial court says there was a lack of nurturing and care by the father, but I searched the record in vain for support for that suggestion.

The only expert witness in the case was a psychologist. He examined the mother, but not the father, and described Ms. Delzer's primary asset in parenting as her capacity to be nurturing and caring with the children. She "just seems very loving and very close with the children." But nothing in the record establishes that the father is not loving or close with the children.

The trial court, appropriately concerned about uprooting the children, asked the psychologist which home was the children's "home base," but the expert did not know. It seems to me that it is the movant's obligation to provide the answer to that question. Surely, we can safely assume that the home base of the children, who spent all of their time with the custodial parent, except for every other weekend visitation, is with the custodial parent and that to uproot the children from the security of that arrangement calls for compelling reasons.

The trial court was influenced by the significant improvements in the mother's personality, psychological health and personal development, which overcame the very deficiencies that caused the court to award custody to the father in the original divorce proceeding. The trial court concluded that those significant changes produced "a more balanced or level field between the parents." But, again, this is not an original custody proceeding and so the playing field is not as "balanced" or as "level" as the trial court believed. Instead, two years have elapsed, during which time the father has served as the primary caretaker of the children. The trial court's assessment of the noncustodial parent's virtues overlooks the importance of the children's attachment to, familiarity with and reliance on their custodial caregiver, their life and their routine they have had for over two years with their father, their primary caretaker. In any change of custody proceeding, the important factor is the stability of the child's relationship with the custodial parent. *E.g., Blotske v. Leidholm, supra.*

I agree with the majority that the trial court, in changing custody, failed to take into account the importance of maintaining stability and continuity in the children's lives. This is a couple whose cooperation with visitation appears to have benefited their children. Nothing in this record suggests any compelling need to change custody. Accordingly, I believe a mistake has

been made. I, therefore, join in the majority's disposition.

MESCHKE, Justice, dissenting.

I respectfully dissent. In my view, the trial court correctly understood and applied the law in changing custody and in granting permission for the children to reside with their mother nearby in South Dakota.

The trial court determined that the father had not performed "adequately" in "rearing and nurturing" the children, and that the mother had demonstrated that she would "excel" in doing so.

The court finds more growth potential for the children with the mother than has been demonstrated by the father these past two years. Rearing and nurturing are more than bathing, feeding and clothing. He has performed the latter functions adequately. However, the court finds the mother can excel in the former.

In view of these express findings, I cannot agree with the majority that the trial court "did not find [the father] incapable or unable to perform his parental functions adequately."

Parenting is "more than bathing, feeding and clothing," as the trial court ruled. Improved educational instruction, religious training, and medical care are factors for a trial court to consider in determining whether existing custody adversely affects the children. *Von Bank v. Von Bank,* 443 N.W.2d 618 (N.D.1989). In *Von Bank,* we affirmed a change of custody of a child from her mother to her father when the trial court found that the father "appeared better able to monitor and meet [the child's] educational and health needs," and that "the better and more caring environment for [the child] was with [her father]." 443 N.W.2d at 621. *See also Ebertz v. Ebertz,* 338 N.W.2d 651 (N.D.1983). As in *Von Bank* and *Ebertz,* I believe the trial court here fairly considered and applied relevant factors.

As one example, Shawna testified that Ryan and Sarah were not "progressing" in their educational and emotional development because Tim did little or nothing to contribute to their "intellectual progress" by playing games with them or by reading to them. Shawna also testified that she was not "allowed to go to church" while she was married to Tim, and that Tim's attitude about his children attending church and developing educationally has "remained the same" as before the divorce. Dr. Patterson, a licensed psychologist, opined that one of Shawna's strengths was "her understanding of the developmental needs of her children." Under NDRCivP 52(a), we should give due regard "to the opportunity of the trial court to judge the credibility of the witnesses."

The majority, in n. 3, discounts the trial court's finding that "for whatever reason, the father has treated the children unequally solely because of their sex difference." The majority reweighs evidence of one illustrative incident and rejects the finding. In view of other similar evidence about Tim's "controlling" attitude towards women and his children, continuing an attitude that contributed to his separation from Shawna, I think it is wrong for us to reweigh this evidence.

The majority says that custody should not be changed because their mother "may be able to give them moderately better surroundings." While I agree with that principle, as I did in authoring *Orke. v. Olson,* 411 N.W.2d 97 (N.D.1987), I do not agree that this is such a case. Rather, as in *Von Bank* and *Ebertz,* these children are not progressing satisfactorily, and the trial court found that they were adversely affected. While Timothy has been doing "reasonably well," as the majority observes, in bathing, feeding, and clothing his children, his "rearing and nurturing" has flagged. The trial court found his efforts deficient. So should we.

For these reasons, I would affirm the trial court's change of custody.

JOHNSON, Justice, dissenting.

For the reasons expressed by Justice Meschke, as well as my concern that we are intruding upon the role of the trial

court in judging credibility and weighing the many nuances of the parties' presentations, personalities, and physical and emotional demeanor, I dissent. A cold record is not equal to a personal appearance in making judgments as to the character and likely future conduct of human beings.