Gary Eugene MILLER, Plaintiff and Appellee,

v.

Charlene LaVon MILLER, Defendant and Appellant.

Civ. No. 9871.

Supreme Court of North Dakota.

May 12, 1981.

Georgia M. Pope, of Pope & Stites, Jamestown, for plaintiff and appellee.

Larry F. Nordick, of Legal Assistance of North Dakota, Fargo, for defendant and appellant.

VANDE WALLE, Justice.

Charlene Miller appealed from an amended judgment of the district court of Stutsman County entered on August 15, 1980. That amended judgment changed custody of Christa Miller from Charlene to Gary Miller. We reverse.

Charlene and Gary Miller were divorced in Minnesota on November 11, 1976. During the course of their marriage they had three children: Michael, born December 11, 1963; Catherine, born June 28, 1966; and Christa, born April 18, 1970. Gary was awarded custody of Michael, and Charlene was given custody of the two girls. Gary and Michael stayed in Minnesota, while Charlene and the girls moved to Jamestown, North Dakota. Within a short time after the divorce Gary encountered rather serious difficulties in his attempts to exercise his visitation privileges with the girls. As a result, he moved the Minnesota court which had granted the divorce to reduce his child-support obligations. On July 8, 1977, the court found that the source of Gary's visitation problems was Charlene's uncooperativeness and that such conduct by Charlene was cause for reduction in the child-support payments. An order to that effect was entered.

Three days after the Minnesota court granted Gary's motion for reduction of child-support payments, Gary filed an action in the district court of Stutsman County seeking a change in custody regarding Christa and Catherine. With one minor exception, the trial court adopted the identical findings of fact spelled out by the Minnesota court in the reduction-of-child-support action. The trial court denied Gary's request that he be granted custody of Christa and Catherine and instead set forth detailed visitation rights regarding Christa and ordered Charlene to cooperate with Gary's attempts to exercise those rights.[1]

On October 1, 1979, Gary again filed a motion with the district court of Stutsman County requesting that he be granted custody of the children. In his affidavit accompanying that motion Gary incorporated by reference the affidavit which he had submitted in support of his 1977 motion for change of custody. Both affidavits centered on specific events which he claimed demonstrated the frustration of his visitation rights and which he alleged served as a reason for the granting of custody change. Charlene's return to Gary's motion, along with her supporting affidavits, generally denied that the events which Gary claimed to have occurred had taken place. Neither Charlene's return nor the affidavits made mention of the events and allegations appearing in the affidavit supporting Gary's 1977 motion for custody change. On November 7, 1979, following a hearing which had been held on October 31, 1979, regarding Gary's motion, the trial court issued the following pertinent findings of fact, conclusions of law, and order:

"FINDINGS OF FACT

"3.

"That custody of Michael Douglas Miller was awarded to the Plaintiff and custody of Catherine LaVon Miller and Christa Louise Miller was awarded to the Defendant all subject to respective, reasonable right of visitation by each parent. Reasonable visitation rights were determined to be; 'That each party shall be allowed visitation of the respective minor children, one Saturday per month, one Sunday per month, on a following weekend, and on one full weekend per month. Each party shall be allowed right of visitation of the children on alternate holidays, and for

---

1. Regarding Catherine, the court ordered that Gary's visitation rights with her be suspended pending a satisfactory report to the court with respect to Catherine's mental attitude concerning such visitations.

a period of six weeks during the summer shall be allowed to have the children at their respective residence for the purpose of visitation.'

"4.

"That the Defendant has made no effort to exercise her visitation rights with Michael Douglas Miller since the decree was entered in 1976.

"5.

"That the Plaintiff has attempted to exercise his rights of visitation with Catherine and Christa. That his visitation rights have been substantially interfered with by the misconduct of the Defendant in that she has effectively prevented visitation with his minor daughters on numerous occasions many of which incidents are documented in previous proceedings in this court and the court in Minnesota. The most recent incident occurred in June of 1979, as it was established by the testimony that the Plaintiff wrote a letter to the Defendant in May of 1979 in an attempt to arrange visitation for his two month summer visitation with Christa. The Plaintiff in his letter set forth that he would arrive in Jamestown, North Dakota on June 23, 1979, for purposes of picking up his child, Christa. It was established by the testimony that the Defendant left Jamestown for the State of Colorado some several days prior to the 23rd of June with both minor children in her custody after having received the Plaintiff's letter request for visitation. It was further established that the Defendant did not notify the Plaintiff that she was leaving Jamestown and if she did attempt to notify him he received no such notification. The Defendant did not inform the Plaintiff of her whereabouts or that of the children. The Plaintiff learned of the Defendant's location only through the instigation of a reciprocal action for support by the Defendant against the Plaintiff.

"6.

"That the Plaintiff is now and has been current in his child support obligations with respect to his minor children.

"CONCLUSIONS OF LAW

"That the conduct of the Defendant has been such that the Plaintiff has been wrongfully and wholly deprived of his rights of visitation with the two minor children of the parties herein in the custody of the Defendant.

"ORDER

"IT IS NOW HEREBY ORDERED that the Plaintiff be awarded trial custody of the parties' minor child, Christa Louise Miller, for a period of one year to commence on November 1, 1979, subject to the following visitation rights in Defendant: That the Defendant shall be entitled to have Christa Louise Miller with her for six weeks during the summer months commencing June 15th to August 15th. That if Christa Louise Miller is desirous of spending the 1979 Christmas holidays with the Defendant, that she should be allowed to do so. In any event, the Christmas holidays will be alternated between the parties on a yearly basis. This court will review the trial custody of Christa Louise Miller upon motion of the Defendant at the end of the summer visitation 1980. In all other respects said judgment and decree shall remain entered."

On July 25, 1980, Charlene filed a document entitled "Defendant's Motion To Review Court Order." In that motion Charlene requested the trial court to "amend the trial custody Order" of November 7, 1979, and to "grant her full custody" of Christa, subject to reasonable visitation rights held by Gary. Following a hearing on August 4, 1980, regarding Charlene's motion, the trial court issued the following pertinent findings of fact and conclusions of law:

"FINDINGS OF FACT
"5.

"That the original custody order entered November 11, 1976, was modified by this Court's Order dated November 7, 1979, in that Plaintiff was awarded tem-

porary custody of the parties' minor child, Christa Louise Miller, for a period of one year to commence November 1, 1979, subject to the following visitation rights in Defendant: that the Defendant shall be entitled to have Christa Louise Miller with her for six weeks during the summer months commencing June 15 to August 15. That if Christa Louise Miller is desirous of spending the 1979 Christmas holidays with the Defendant, that she be allowed to do so. In any event, the Christmas holidays will be alternated between the parties on a yearly basis. This Court will review the temporary custody of Christa Louise Miller upon motion of the Defendant at the end of the summer visitation 1980.

"6.

"That in preparation for hearing on the instant motion, home studies were conducted in both Mower County, Minnesota, and Stutsman County, North Dakota, copies of which reports were furnished to counsel for both parties and the Court having given due consideration to said reports in arriving at its decision.

"7.

"That the minor, Christa Louise Miller, was interviewed in Chambers by the Court and found to have reached the age of discretion and that said child expressed a preference to remain with her mother, Charlene LaVon Miller. The Court considered and weighed said preference before arriving at its decision.

"CONCLUSIONS OF LAW

"1.

"That the last year spent with the Plaintiff and his family in Austin, Minnesota, was beneficial to Christa and that it would be in her best interest to give full and permanent custody to Plaintiff, subject to reasonable visitation in the Defendant as follows:

"Plaintiff is hereby awarded the control and custody of Michael Douglas Miller and Christa [Louise] Miller, and Defendant is awarded custody and control of Catherine LaVon Miller, each

subject to reasonable rights of visitation respectively. The two week Christmas vacation shall be divided between the parties with the parties alternating the week containing the Holy days of Christmas and Christmas Day each year. The parties shall also be entitled to a six week visitation with their non-custodial children during the summer months commencing June 15 to August 15.

"2.

"With respect to the parties' eldest daughter, Catherine LaVon Miller, visitation with Plaintiff shall not commence until satisfactory reports have been received by the Court with respect to her mental attitude concerning such visitations.

"3.

"Further, the parties shall have visitations with their children as deemed reasonable on prior notice whenever Plaintiff is in Jamestown, North Dakota, and whenever the Defendant is in Austin, Minnesota.

"4.

"In all other respects said Judgment and Decree shall remain as originally entered."

The amended judgment awarding custody and control of Christa to Gary was filed on August 15, 1980, and it is from that amended judgment that Charlene now appeals.

Charlene raised four issues in this appeal:

1. Whether or not the findings of fact of the trial court were clearly erroneous under N.D.R.Civ.P. Rule 52(a).

2. Whether or not there had occurred a change of circumstances sufficient to support a modification of the original custody order.

3. Whether or not the expressed preference of Christa to live with Charlene had been accorded sufficient consideration by the trial court.

4. Whether or not Christa's best interests require that the original custody award be modified.

■ A determination by the trial court regarding custody of a child is dealt with on appeal as a finding of fact, and our review of that fact is limited to a consideration of whether or not the trial court's finding is clearly erroneous under N.D.R.Civ.P. Rule 52(a). *Bergstrom v. Bergstrom*, 296 N.W.2d 490 (N.D.1980). This court will not set aside a custody award unless we are left with a definite and firm conviction that a mistake has been made. *Gross v. Gross*, 287 N.W.2d 457 (N.D.1979).

■ Generally, in the context of a family divided by divorce, child-custody disputes arise under one of two circumstances: (1) in the course of the divorce proceedings; and (2) when a parent, subsequent to the original custody award and divorce decree, seeks to have the court modify that original custody award. The action underlying the present appeal arose under the latter circumstance. The significance of the distinction between the two types of circumstances rests in the fact that the trial court's determination under the former revolves solely around the concept of the child's best interests. Sec. 14–09–06.1, N.D.C.C. On the other hand, the trial court's consideration of a request to modify a custody award requires the determination of two issues: (a) whether or not there has been a significant change of circumstances since the original divorce decree and custody award; and, if so, (b) whether or not those changed circumstances are such that the best interests of the child would be served by a change in custody. *Bergstrom, supra.*

The present case poses an unusual problem regarding modification of a custody order. We have before us the results of what was clearly a procedurally bifurcated custody change. On one hand, Gary was the instigator of the change when he brought the 1979 action to have the court modify the original custody award. That attempt resulted in what the court termed a "trial custody" arrangement regarding Christa. On the other hand, in 1980, Charlene became the movant regarding custody modification when she brought an action to have the trial court terminate the trial cus-

tody and return custody of Christa to her. Charlene claims here that the trial court never made findings or conclusions regarding changed circumstances affecting the best interests of Christa. She argues that because there have been no such findings the trial court's decision to modify the original award and grant custody of Christa to Gary was clearly erroneous. At the same time, Gary stands firmly and solely on the position that it was Charlene who bore the burden of proving the changed circumstances. Gary's position is this: The original custody award was modified as a result of the action brought by Gary in 1979; that modification, notwithstanding the court's use of the term "trial custody," took legal custody of Christa from Charlene and vested it in Gary; the time limit within which Charlene could have appealed the 1979 action has long ago expired; she appeals here from the 1980 judgment regarding modification of child custody; and, because she was the movant in that action, the burden was on her to satisfactorily demonstrate changed circumstances affecting the best interests of Christa and requiring a change in custody.

■ The burden of showing a change of circumstances which affects the best interests of a child and requires a change in custody is always on the party seeking modification of the custody award. *Bergstrom, supra.* Neither Charlene nor Gary disputes this proposition. However, Charlene contends that because the burden was on Gary when he brought the custody action in 1979, and because that action resulted in a "trial custody" order, the burden remained on him when the custody disposition at issue here was to be made in 1980. Gary's response to Charlene's argument is that the "trial custody" language in the 1979 order, along with the express invitation to Charlene in that order that she could move the court to review the "trial custody" order, did not change the nature of that order. His argument is that the 1979 order brought about a change in custody and, because all custody orders are modifiable, Charlene was free to move for change in custody at any time

regardless of the invitation in the order. Gary concludes that because Charlene did not appeal from the 1979 order the sole focus of our review should be on the 1980 order and, because Charlene had the burden of proof in 1980, there could be no clearly erroneous findings regarding Gary's burden to show a change of circumstances affecting Christa's best interests.

We cannot agree with Gary that the events in 1979 should be ignored. We believe that the "trial custody" language used by the court in the 1979 order could have misled Charlene and thus prevented her from viewing that order as reflecting an absolute change in custody regarding Christa. Our conclusion to not disregard the events which occurred in 1979 is further supported by the fact that the trial court, during the 1980 hearing, referred to the 1979 order in ways which indicate that the trial court itself did not consider the order to be a typical change-in-custody order. In the transcript of the 1980 hearing we find the following statement made by the trial judge:

"That is where we are at now, and as I re-read the order, it said that the father would have temporary custody for one year . . ."

And later in the transcript this statement by the trial judge appears:

"As the Court has already stated in Chambers, the reason for this hearing, and has summarized somewhat the background which goes back to the hearing in October 1979 resulting in the Order of November 1979 in which the trial court stated that the plaintiff would have custody of Christa for one year."

Also, at the close of the 1980 hearing, the trial judge stated:

"As I stated before, the Court created a testing period."

And, finally, in his findings of fact following the 1980 hearing, the trial judge stated:

"5.

"That the original custody order entered November 11, 1976, was modified by this Court's Order dated November 7, 1979, in that Plaintiff was awarded temporary custody of the parties' minor child, Christa Louise Miller, for a period of one year to commence November 1, 1979, . . ."

We cannot emphasize enough that in this State the paramount consideration regarding custody matters is the best interests and welfare of the child. Sec. 14–09–06.1, N.D.C.C. The 1979 findings of fact, conclusions of law, and order by the trial court contained only one conclusion of law. That conclusion reads:

"That the conduct of the Defendant has been such that the Plaintiff has been wrongfully and wholly deprived of his rights of visitation with the two minor children of the parties herein in the custody of the Defendant."

In *Muraskin v. Muraskin*, 283 N.W.2d 140 (N.D.1979), we concluded that frustration of visitation privileges alone cannot constitute a sufficient change of circumstances to warrant a change in custody. The change of circumstances must weigh against the child's best interests before a change in custody is justified. We recognize that visitation privileges operate as a two-way street and that they relate to both the interests of the child and the interests of the noncustodial parent. However, the interests of the parent are important only to the extent of how these interests bear on the question of what is best for the child. *Vetter v. Vetter*, 267 N.W.2d 790 (N.D. 1978).

Neither the findings of fact nor the conclusions of law for the 1979 action makes any reference to Christa's best interests. Instead, the entire focus was on the problems Gary had encountered in attempting to exercise his visitation rights. There was no finding or conclusion that these problems had worked against Christa's best interests. The record indicates that the entire 1979 matter was handled by the trial court in a manner which may have allowed Charlene to conclude that Christa's year-long stay with Gary was intended to compensate him for lost visitation privileges and that his effort to gain custody of Christa would be tried anew at the end of the trial period.

In light of the above discussion, we believe that the position of the trial court following the hearing on Gary's motion in 1979 was that the matter should be put on "hold" while Gary had temporary custody of Christa and that following the "trial custody," the court, at Charlene's request, would reconsider the evidence from the 1979 action along with the new evidence which might come into existence during the "trial custody" period. In line with this conclusion, we believe that the burden of showing changed circumstances bearing on the best interests of Christa was on Gary in 1979 and remained on him during the 1980 action. Because of this conclusion we look to the findings of the trial court following the 1980 hearing in order to determine whether or not they support a showing by Gary that there were changed circumstances affecting Christa's best interests and requiring a change in custody.

It is not enough for courts in a child-custody matter to make the bare assertion that it is in the best interests of a child that he or she should be in the custody of one or the other parent. The phrase "best interests," standing alone, supplies this court with no facts to examine when attempting to determine the basis of a custody award. There must be a foundation for a "best interests" conclusion, and Section 14–09–06.2, N.D. C.C.,[2] provides factors which the trial court must, when applicable, consider in determining a custody matter. The consideration of these factors, as reflected in the record, will provide the basis for such a determination. There is no requirement that the trial court must make an express written finding as to each of the factors listed in Section 14–09–06.2, N.D.C.C. *Lapp v. Lapp*, 293 N.W.2d 121 (N.D.1980). However, the factors enumerated in that statute are factors which have always been relevant for consideration by a trial court when determining custody, and the record, particularly the findings and conclusions, should reflect the trial court's consideration of all applicable factors. Further, while Section 14–09–06.2 does not require express written findings as to each factor enumerated therein, N.D.R.Civ.P. Rule 52(a) does require that the court "find the facts specially."

Our review of the trial court's findings of fact and conclusions of law following the 1980 hearing reveals only two findings of fact and one conclusion of law relating specifically to the issue at hand. The court found as facts that (1) home studies had been done regarding Christa in relation to both her living situation with Charlene and her living situation with Gary; and (2) Christa, having reached the age of discretion, preferred to live with

---

2. Section 14–09–06.2, N.D.C.C., states:

   "*Best interests and welfare of child—Court consideration—Factors.* For the purpose of custody, the best interests and welfare of the child shall be determined by the court's consideration and evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

   "1. The love, affection, and other emotional ties existing between the parents and child.

   "2. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

   "3. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

   "4. The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.

   "5. The permanence, as a family unit, of the existing or proposed custodial home.

   "6. The moral fitness of the parents.

   "7. The mental and physical health of the parents.

   "8. The home, school, and community record of the child.

   "9. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

   "10. Any other factors considered by the court to be relevant to a particular child custody dispute.

   "In any proceeding under this chapter, the court, at any stage of the proceedings after final judgment, may make orders about what security is to be given for the care, custody, and support of the unmarried minor children of the marriage as from the circumstances of the parties and the nature of the case is equitable."

Charlene. The only pertinent conclusion of law was to the effect that the year Christa had lived with Gary had been "beneficial" to her and that it would be in her best interests to award Gary custody. The record does not reflect in any fashion the development of significant changed circumstances since the original custody award. Because of this absence of changed circumstances, there could be no showing that Christa's best interests had been affected to the extent that the trial court could conclude that custody should be changed. The custody award contains no reference to the basis of the trial court's decision. Because of this it is impossible for us to obtain a correct understanding of the factual issues decided by the trial court in order to determine on review whether or not the award of custody to Gary was based upon the best interests of Christa. See *DeForest v. DeForest*, 228 N.W.2d 919 (N.D.1975). This court will not presume that the trial court considered the interests and welfare of the child when a custody award is in dispute. *DeForest, supra.*

As we pointed out earlier, the controlling issue in a child-custody dispute is the best interests and welfare of the child. We are unable to find in the record a basis for the 1980 change-in-custody order, and when the basis for a conclusion on a controlling issue is not shown, the finding is clearly erroneous. *Voskuil v. Voskuil*, 256 N.W.2d 526 (N.D.1977). We therefore conclude that the trial court's determination to award custody of Christa to Gary was clearly erroneous and we accordingly reverse the judgment.[3]

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

**3.** In light of this conclusion we need not discuss the issue of whether or not Christa's expressed preference to live with Charlene was accorded sufficient consideration by the trial court.