John Mark EBERTZ, Plaintiff and Appellant,

v.

Lana Marie EBERTZ, a/k/a Lana Marie Murphy, Defendant and Appellee.

Civ. No. 10394.

Supreme Court of North Dakota.

Oct. 3, 1983.

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section 27–17–03, N.D.C.C.

David Garcia, of Garcia & Garcia, Devils Lake, for plaintiff and appellant.

Maureen Foughty White Eagle, of Foughty, Christianson & Thompson, Devils Lake, for defendant and appellee.

VANDE WALLE, Justice.

John Ebertz appealed from an amended judgment modifying custody of the children born of his former marriage to Lana Ebertz Murphy. The district court of Ramsey County transferred custody from John to Lana. We affirm.

John and Lana were divorced on August 3, 1979. The trial judge at the divorce proceeding adopted their written stipulation, which specified that John would have custody of their two children, Dominic and Nicholas, and that Lana would have reasonable visitation rights. At the time of the divorce, Dominic was 2½ years old and Nicholas was one year old. After the divorce, both John and Lana continued to live in Devils Lake, North Dakota. Lana later moved to Texas.

Lana maintained contact with her children after leaving Devils Lake. She saw them in 1980 for six weeks in Devils Lake; in 1981 for one month in Texas; and in 1982 for the entire summer in Oklahoma, until the hearing for modification of custody in December 1982. She also sent them clothes, toys, and letters.

The children lived in Devils Lake with John, who worked from 7 a.m. until 6 p.m. Monday through Thursday, earning a salary of $159 a week. While John was at work, the children stayed with their aunt until 5 p.m. and then with the aunt's daughter until John returned home from work. John and the children lived in a low-rent housing area.

In 1981 Lana married John Murphy and gave birth to a daughter. When the children visited her that year in her three-bedroom home in Lawton, Oklahoma, she called the Department of Human Services in Lawton, stating that she believed that her ex-husband, John, was not providing adequate care for the children.

In April 1982 the children again visited Lana in Lawton. Although she was supposed to keep the children for only two months, Lana continued to care for the children in Lawton. In June she petitioned the district court in North Dakota to modify custody, seeking to become the custodial parent. She alleged that there had been a material change in circumstances since the divorce decree. In July John applied to the district court in North Dakota to order Lana to show cause why she should not surrender custody of the children to him. The district court denied John any immediate relief and decided to consider at a later hearing John's request for return of the children with Lana's prior petition for modification of custody. The district judge stated that he would resolve the custody dispute when the Department of Human Services in Lawton had completed its pending home study and psychological evaluation of the children.

After the court conducted the hearing, it issued a brief oral opinion transcribed by the court reporter stating that changed circumstances existed and that Lana as the custodial parent would better promote the children's best interests. The court also granted reasonable visitation rights to John.

On appeal John challenges on two grounds the district court's decision to modify the divorce decree by changing custody from John to Lana. He contends that when the district court determined the children's best interests, it failed to make the specific findings of fact required by Rule 52(a), N.D.R.Civ.P. He also argues that the district court's decision to modify custody was clearly erroneous under Rule 52(a).

The trial judge listened to the testimony of four witnesses: John Ebertz; Karen Azure, who took care of the children while John worked; Lana Ebertz Murphy; and John Murphy, Lana's present husband. There was conflicting testimony concerning the home life of the children while they lived in Devils Lake with John.

Lana testified that John failed to provide proper clothing for the children; that the children failed to receive the attention necessary to prepare them for school; that the children frequently used profane language; and that the children witnessed violence and sexual activities between John and his 17-year-old girlfriend.

John denied that he failed to provide adequate clothing and that the children witnessed any sexual acts. He stated that he had heard the children use improper language but had discouraged it. John also declared that he had been aware that Dominic, the older son, needed help because of a learning disability. John admitted that since the divorce he had been convicted of driving while under the influence once and of open container on three occasions.

Karen Azure testified that as the children's aunt she gave Dominic and Nicholas special attention while John worked. She also stated that the children probably learned improper language from children in the neighborhood.

John Murphy testified that he has a good relationship with Dominic and Nicholas and that because he earns an annual salary of more than $40,000, he could provide for Dominic and Nicholas even though he pays support to three children by his former marriages.

In addition to the testimony of these witnesses, the trial court found significant the studies conducted by the Departments of Human Services in Lawton, Oklahoma, and in Devils Lake, North Dakota. The Lawton study indicated that both children have normal intellectual abilities but that their cognitive, perceptive, and motor skills are below the expected levels. When the evaluators asked the children to draw simple forms, the children did not know how to hold a pencil nor could they identify colors.

The study attributed the children's deficiencies to "a lack of usual stimulation" available to children. The Lawton study also found that the Murphy home would be a beneficial environment for the children. The Devils Lake study did not evaluate the children, but instead considered John's capacity as a custodial parent. The study concluded that the evaluator could not form an opinion as to John's capabilities as a parent without interviewing the children. The trial court recognized that the conclusion of the Lawton study would be more persuasive if one agency had conducted studies of both parents.

Rule 52(a), N.D.R.Civ.P., states: "In all actions tried upon the facts without a jury ... the court shall find the facts specially ..." In this instance the trial judge in his oral opinion did not make detailed findings of fact. But in *Gross v. Gross,* 287 N.W.2d 457, 460 (N.D.1979), after emphasizing the need for specific findings of fact, this court recognized that the trial judge determines the credibility of the witnesses and that "[p]resent sense impressions of that nature are not instilled by an appellate perusal of the trial transcript."

■ In the present case, the trial judge listened to the testimony of four witnesses and read the evaluations prepared by the Departments of Human Services in Lawton and in Devils Lake. In determining the best interests of the children, the trial judge also generally discussed the factors listed in Section 14–09–06.2, N.D.C.C. The court specifically stated that "love and affection and emotional ties exist between the parents and children," but that neither parent ranks highly with respect to moral fitness. In addition, the trial court stated that it would not consider Dominic's preference because a five-year-old child is not of sufficient age or intellect to testify.

Although we believe more specific findings of fact would have been appropriate in this instance, the trial judge related the evaluations by the Departments of Human Services to the credibility of the witnesses at trial and applied some of the factors listed in Section 14–09–06.2, N.D.C.C. The

trial judge's oral opinion satisfies the minimum requirement of Rule 52(a) that the court shall make specific findings of fact. See *Corbin v. Corbin,* 288 N.W.2d 61 (N.D. 1980).

■ A trial court's decision to modify custody is subject on appeal to the "clearly erroneous" standard of Rule 52(a). *Lapp v. Lapp,* 336 N.W.2d 350 (N.D.1983); *Voth v. Voth,* 305 N.W.2d 656 (N.D.1981); Rule 52(a), N.D.R.Civ.P. The findings of the trial court will not be set aside unless they are clearly erroneous, which means that this court after reviewing the record is left with a definite and firm conviction that a mistake has been made. *Jacobson v. Jacobson,* 314 N.W.2d 78 (N.D.1981). This court limits its scope of review by recognizing the trial judge's ability to ascertain the demeanor and credibility of the witnesses. *Lapp v. Lapp, supra; Gross v. Gross, supra.*

■ This court distinguishes between the original award of custody and a decision to modify custody. *Miller v. Miller,* 305 N.W.2d 666 (N.D.1981). When initially awarding custody, the trial judge determines the single issue of the child's best interests. Sec. 14–09–06.1, N.D.C.C. When modifying custody, the trial judge must determine two issues: whether or not there has been a significant change of circumstances since the original divorce decree and custody award and, if so, whether or not those changed circumstances are such that a change in custody fosters the best interests of the child. *Miller v. Miller, supra; Voth v. Voth, supra.*

■ Since the original divorce decree, Lana has remarried, has achieved economic stability, and has stated that she is eager to stay at home to help foster the children's underdeveloped cognitive skills. Although these changes relate to the environment that Lana now can provide rather than the environment that John has previously provided, we believe the evidence supports the trial court's finding that the change of circumstances is significant. John's efforts to frustrate Lana's visitation rights do not constitute circumstances that warrant a

change in custody, nor do they justify Lana's failure to return the children after the expiration of her period for visitation [see *Muraskin v. Muraskin,* 283 N.W.2d 140 (N.D.1979)]; but we are not left with a definite and firm conviction that a mistake has been made because the judge found significant Lana's changed financial and marital status and her opportunity to provide special attention to the children.

The change of circumstances must not only be significant, but it must also indicate that modifying custody will promote the children's best interests. Although we have recognized that "it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between the parents" [*Lapp v. Lapp,* 293 N.W.2d 121, 128 (N.D.1980)], the trial court's decision is not clearly erroneous. The modification does not indicate that John is an unfit parent nor that the modification is fair. As we stated in *Larson v. Larson,* 294 N.W.2d 616, 618 (N.D. 1980): "[T]he fitness of parents is not *the test* for custody awards, nor is fairness to the parents *the test.* . . . The primary consideration is the best interests of the children." [Emphasis in original.]

We therefore affirm the judgment of the district court.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and PAULSON *, Surrogate Justice, concur.

---

* Justice WM. L. PAULSON served as a Surrogate Justice for this case pursuant to Section

27–17–03, N.D.C.C.