Alana LUDWIG, formerly Alana Burchill, Plaintiff and Appellant,

v.

Allen BURCHILL, Defendant and Appellee.

Civ. No. 910201.

Supreme Court of North Dakota.

Feb. 28, 1992.

Leslie Deborah Johnson (argued), Fargo, for plaintiff and appellant.

Carol S. Nelson (argued), Valley City, for defendant and appellee.

ERICKSTAD, Chief Justice.

Alana Ludwig appeals from the judgment of the District Court for Barnes County, denying her motion to modify a previous judgment granting custody of the parties' child to her former husband Allen Burchill. We affirm.

On May 24, 1989, the parties to this case were divorced. At that time, joint custody of the parties' then three-year-old child, Justin, was ordered so that Alana would have physical custody from June 1 to August 15, and Allen would have physical custody from August 15 to May 31 of each year. On August 13, 1990, Alana filed a motion for change of custody. At the request of Alana, a guardian ad litem was appointed on September 4, 1990, pursuant to section 14–09–06.4, N.D.C.C. Also, at the request of Alana, the district court, on or about January 9, 1991, ordered both parties to submit to an alcohol and psychological evaluation. After a hearing on

March 18 and 21, 1991, the district court denied Alana's motion for a change of custody.[1] This appeal followed.

When a trial court's judgment regarding child custody is appealed to this Court, we review the trial court's decision under the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. *Ebertz v. Ebertz*, 338 N.W.2d 651, 654 (N.D.1983); *Silseth v. Levang*, 214 N.W.2d 361 (N.D.1974). We will not disturb a trial court's custody award unless, upon review of the record, we are left with a firm and definite conviction that a mistake has been made. *Miller v. Miller*, 305 N.W.2d 666, 671 (N.D.1981); *Gross v. Gross*, 287 N.W.2d 457 (N.D.1979).

We have previously noted that a trial court must distinguish between original custody decisions and decisions to modify custody. *Heinen v. Heinen*, 452 N.W.2d 331, 333 (N.D.1990). In an original custody proceeding, the trial court focuses solely on what is in the best interests of the child. *Id.* However, in an action seeking to modify custody, a court must generally, first determine whether or not there has been a significant change of circumstances since the previous custody decision, and, if so, then determine whether or not the change in circumstances is such that a change in custody will serve the best interests of the child. *Id.* Additionally, the "burden of showing a significant change of circumstances which requires a change of custody is on the party seeking modification of the custody award." *Id.*

We have recognized, as a general proposition, "that it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between the parents." *Lapp v. Lapp*, 293 N.W.2d 121, 128 (N.D.1980); *see also Silseth v. Levang*, 214 N.W.2d at 364. With this in mind, we have said that "[c]onsecutive determinations about custody cannot change custody back and forth as the scales settle slightly toward first one parent and then the other as their circum-

---

**1.** Although the trial court declined to modify the current custody arrangement, the court did make small changes in visitation rights.

stances change." *Orke v. Olson*, 411 N.W.2d 97, 100 (N.D.1987). Rather, "[t]he change of circumstances must weigh against the child's best interests before a change in custody is justified." *Miller v. Miller*, 305 N.W.2d at 672.

In this case, the trial court, in its memorandum opinion, considered the following relevant changed circumstances, as they related to the various statutory factors to be considered regarding custody, contained in section 14–09–06.2, N.D.C.C.:

"Section 14–09–06.2, N.D.C.C. lists the various factors to be considered regarding custody. In making its decision, the Court will consider these factors as set forth in the statute. In looking at the facts that follow, the Court believes there are several changed circumstances and these will be self-evident.

"1. *The love, affection, and other emotional ties existing between the parents and child.*

"Judge Hoberg noted that both parties loved Justin. This has not changed. The Plaintiff's showing of affection may be more open than the Defendant's, but this lack of public affection should not be interpreted as a lack of love. The factor balances evenly between the two parties.

"2. *The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.*

"Both parties seem to have equal ability to provide these necessities to Justin. The Plaintiff's position has improved since the divorce as she has entered into her third marriage which seems stable.

"3. *The disposition of the parents to provide the child with food, clothing, medical care, ... and other material needs.*

"At the time of the divorce, the Plaintiff was living out of wedlock with David Ludwig and was working as a pizza assembler. She is now married to Mr. Ludwig and living in Casselton, North Dakota where she is a full time hairdresser. They rent a home where the couple live with Mr. Ludwig's two sons from a prior marriage, who

are ages nine and eight. Mr. Ludwig is the assistant manager of the propane department at Cenex in Casselton. The Ludwigs are expecting their first child in July of 1991. The Ludwig's home has four bedrooms and would appear to have adequate room for Justin.

"At the time of the divorce, the Defendant was involved in his farming operation. Due to economic setbacks, the Defendant has left farming and has moved to Jamestown, North Dakota where he works in the receiving department of Wal-Mart. He is unmarried, but dating Karen Christensen, with whom he sleeps on occasion. At present, the Defendant has a night shift, but his hours are flexible so that it is likely he could convert to a day shift. The Defendant and Justin are living with the Defendant's sister and her family while the Defendant secures housing. The Defendant plans to purchase a house.

"Both parties have a high school education and have similar earning capacities. The Court finds that the parties' disposition to provide food, clothing, medical care and other material needs to be equal.

"4. *The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.*

"Justin lived with the parties from birth until the time of the divorce. It has now been almost two years since the divorce. During this time, with the exception of visitation periods, Justin has lived with his father. The pre-school years are very important in forming a well-rounded individual.

"The Defendant has an advantage on the issue of maintaining continuity as Justin has been with him the past two years. Another advantage the Defendant has is that he has a larger support group for Justin. His sister and her family as well as Justin's paternal grandparents live in Jamestown. The Defendant's brother and his family live north of Valley City, North Dakota. Justin has spent his life with these people and there is a strong argument that can be made that this love and support should continue.

"Through no fault of the Plaintiff, her support group is smaller. She has a sister near by and, of course, her husband, David. Though little mention was made of this at the hearing, the Plaintiff's parents do live in the Hope area. On the maintaining continuity issue, the scales tip in favor of the Defendant.

"On the issue of stable and satisfactory environment, the Plaintiff may have an edge due to her remarriage and a house in which to live. It should be kept in mind that any disadvantage the Defendant may have on this issue is temporary as he is caught at a time when he is changing residences. The Court sees this as temporary in nature.

"5. *The permanence, as a family unit, of the existing or proposed custodial home.*

"The permanence of the Defendant and his son as a family unit seems to be secure. As the Defendant is single, the issue of divorce affecting permanence is not an issue.

"The Plaintiff is thirty and into her third marriage. The Court certainly hopes that this is the marriage that will last. When one considers the approximate fifty per cent marital failure rate with the Plaintiff's past marital record, the future is not as optimistic as it could be.

"Justin has had the advantage of being an only child and the attention that goes with it. Should he stay with his father, this attention and continuity would continue.

"The argument can be made that it would be better for him to live with more children. It seems that any advantages would be outweighed by the disadvantages were he to live with two step-brothers and a new half-brother or sister. Stepping in and being a five year old step-brother to nine and eight year old natural brothers could be traumatic to say the least. Even more traumatic would be a breakup of the Plaintiff's marriage. Such an exposure to this experience would have a very negative impact on Justin.

"6. *The moral fitness of the parents.*

"This issue seems to be a toss-up between the two parties. They are representative of the younger generation today. Marriage is not taken seriously. Unlawful cohabitation is the norm. By today's standards, one must conclude that they fall in the average range of moral fitness. To their credit, both parties are getting older and each has taken some steps through counseling to improve themselves.

"7. *The mental and physical health of the parents.*

"The parties are both in good physical health. Both parties have undergone psychological and chemical dependency evaluations.

"The Plaintiff's psychological evaluation revealed a normally adjusted suitable parent. Mr. Ludwig's evaluation revealed the same results. The Plaintiff's chemical dependency evaluation revealed no chemical dependency.

"The Dependant's [sic] psychological evaluation revealed an 'individual showing some mild depression symptomatology which may be related to the stresses of a child custody dispute.' The chemical dependency evaluation resulted in outpatient treatment which included seventeen sessions which the Defendant completed. However, he did not follow up with Alcoholics Anonymous attendance as was prescribed. The original evaluation was done pursuant to Court order due to a DUI conviction in December of 1989.

"There is no evidence that either person suffers from any mental illness. The Defendant's chemical dependency evaluation gives an edge to the Plaintiff. However, the Court believes that active participation in Alcoholics Anonymous would continue the last stages of the Defendant's treatment program.

"8. *The home, school and community record of the child.*

"Justin attends preschool in Valley City one day per week. The guardian ad litem's investigation and report indicated an unpredictable child with some social behavior problems. However, the majority of this negative information was recanted at trial

by Mrs. Ament, who is one of Justin's teachers. The Defendant is also taking steps to have his son enrolled in Kindergarten in the fall.

"9. *The reasonable preference of the child.*

"Justin is only five years old and as a result the Court determines that it is inappropriate to inquire of him regarding parental preference.

"10. and 11. *The existence of domestic violence and a person who may affect the child's best interests.*

"Other than a reference that will be made in Number 12, domestic violence is really not an issue in this case. Nor has the Court been alerted to any person who may significantly affect the child's best interests.

"12. *Other relevant factors.*

"There was considerable testimony at trial regarding each party's shortcomings. Much of this was petty and did not influence the Court. A few miscellaneous factors that are relevant will be addressed in this section.

"The Court, like the guardian ad litem, is concerned about parties at the Ludwig home. These were minimized by the Plaintiff, but this does not change warning signs such as an underage person consuming alcohol in the Ludwig home and the breaking of a window.

"A further concern is arguments and fighting between the Plaintiff and her new husband. Considering the Plaintiff's past marital failures, it is somewhat alarming that these confrontations have started so soon in this marriage. Perhaps the Plaintiff's marriage counseling was not sufficient and should be continued, though it will not be ordered.

"The Defendant has been evaluated as being a mild alcoholic. He is resistant to attending Alcoholics Anonymous. When one considers the recent stressors of divorce, failed farming venture, change of employment, change of residence, a D.U.I.

conviction and being a single parent, one must conclude that he needs a support group to help him cope with these problems, as well as his abuse of alcohol. Alcoholics Anonymous has an outstanding track record and should be participated in by the Defendant.

"As in all custody cases, we are not dealing with perfect parents. Nor in this case is it clear cut as to which party is the better parent. What is evident is that Justin is making progress under the present custodial framework. Primarily for reasons of maintaining continuity in a stable environment and a larger and stronger supporting extended family, the Court will deny the Plaintiff's Motion and will continue physical custody with the Defendant as outlined in the original Judgment. Joint legal custody shall continue as well. The Defendant will be required to attend Alcoholics Anonymous at least twice per month and should secure a sponsor."

On appeal, Alana asserts that the trial court did not give sufficient weight to the recommendations of the guardian ad litem,[2] and further asserts that the trial court did not give sufficient weight to the fact that Allen and Justin had moved from the family farm to Allen's sister's home in Jamestown and were sharing living arrangements with his sister and brother-in-law and their two children, as well as Allen's parents; that Allen was working the "night shift"; that Allen had received a DUI and was diagnosed as a mild alcoholic; that Justin had started using profane language and had exhibited signs of anger and frustration; that Alana's situation had significantly improved and stabilized; and that she and her husband earned signficantly more money than Allen.

As to the move from the family farm and the current living arrangements, the trial court specifically believed Allen, concluding that his situation was just temporary. Likewise, the trial court concluded that Allen's work schedule was flexible, so that he

---

**2.** The guardian ad litem essentially recommended that Justin live with Alana during the school year and with Allen during the summer.

could likely switch to the "day shift." As to Allen's recent DUI conviction and subsequent diagnosis as a mild alcoholic, the court strongly suggested that Allen attend Alcoholics Anonymous twice a month and that he secure a sponsor. As to the guardian ad litem's report which suggested that Justin may have some behavioral problems, the trial court noted that much of the factual basis for such a conclusion by the guardian ad litem was recanted at trial by Mrs. Ament, one of Justin's teachers. Lastly, although the trial court recognized that Alana's overall situation had improved, the trial court expressed some concern over reports of parties at the Ludwig home as well as reported fights between Alana and her new husband.

We limit our review by recognizing that the trial court is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review. *Ebertz v. Ebertz*, 338 N.W.2d at 654. The mere fact that we may have viewed the evidence differently had we been the trier of fact does not entitle us to reverse the trial court. *Reede v. Steen*, 461 N.W.2d 438, 440 (N.D.1990).

Also, we note that Alana places reliance on past decisions of this Court wherein we affirmed a trial court's change of custody award with facts similar to this case. *See e.g. Ebertz v. Ebertz*, 338 N.W.2d 651. However, arguing the similarity between this case and cases wherein we affirmed a change of custody ignores this Court's role. Our role is not to ensure the uniformity of results under similar facts. Rather, our role is limited to ensuring that the trial court's decision is not clearly erroneous.

After reviewing the record and the trial court's decision, it is apparent that the trial court concluded that the the change in circumstances did not warrant a change of custody, as the best interests of the child were better served by maintaining the current custody arrangement. We are not convinced from a review of the detailed findings that a mistake has been made, and, accordingly, we do not find this deter-

mination against a change in custody to be clearly erroneous.

For the aforementioned reasons, the judgment of the district court is affirmed.

VANDE WALLE, J., and ALLAN SCHMALENBERGER, District Judge, concur.

ALLAN SCHMALENBERGER, District Judge, sitting with the Court, due to the resignation of the Honorable H.F. GIERKE III, as of November 20, 1991.

LEVINE, Justice, concurring specially.

I write specially to address a troublesome incongruity in our case law. Justice Oliver Wendell Holmes said, "A word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to its circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918). Language is a pliable, flexible tool that we use to communicate. A slip of the pen may result in an unintentional slip of the meaning we intend to attribute to a word or phrase or sentence. I believe this phenomenon explains the dissonance in our expression, over the years, of the legal principles at stake in change-of-custody cases.

In order to warrant modification of a decree to change custody, there must be a significant change of circumstances that *requires* the change of custody in the best interests of the child. *Cross v. Cross*, 374 N.W.2d 346 (N.D.1985); *Olson v. Olson*, 361 N.W.2d 249 (N.D.1985). It is not every significant change in circumstances that warrants a change in custody. It is only that significant change in circumstances that *necessitates*, to foster the child's best interests, a change in custody. *See Orke v. Olson*, 411 N.W.2d 97 (N.D.1987); *Miller v. Miller*, 305 N.W.2d 666 (N.D.1981). In order to require or necessitate a custody transfer, the significant change of circumstances must weigh against the best interests of the child. *Id.*

But, the language used in some of our cases and cited by the majority, that we analyze whether a change in custody will

"serve" or "foster" the best interests of the child, is misleading and inaccurate. There are many significant changes in life that may do just that but nonetheless do not justify changing custody. *E.g.*, a remarriage resulting in an exemplary stepparent or greater financial resources or a rehabilitated noncustodial parent, ad infinitum. While a change of custody in any of these substantial change-of-circumstance examples may truly benefit the child, it would not be required or necessary for the best interests of the child because it would not outweigh the benefit to the child of maintaining the continuity of the care, guidance and nurture provided by the custodial parent. The stability of the custodial parent-child relationship is the key to any change-of-custody analysis. *See Miller v. Miller, supra.* That stability is the critical factor in the best-interests equation. *Okre v. Olson, supra; see Lapp v. Lapp,* 293 N.W.2d 121 (N.D.1980). Whether the change of circumstances requires that there be a change of custody must be answered in the context of the recognized overriding benefit in maintaining the stability and continuity of the custodial parent-child relationship and not by looking at the particular change and whether it will "foster" the best interests of the child.

During oral argument, the argument was posed that any significant change of circumstances entitles the court to change the custody of the child, if that change would be "in the best interests" of the child. But that is not the justification under our law for a change of custody. Were it so, any motion for modification when there was a significant change of circumstances, would entitle the fact finder to retry the original custody placement. That would be inconsistent with and unauthorized by our modification jurisprudence.

I agree that the trial court's order denying the motion to modify is not clearly erroneous. I, therefore, concur in the decision of the majority affirming the judgment.

MESCHKE, J., concurs.