Cindy L. **BLOTSKE,** f/k/a Cindy L. Leidholm, Plaintiff and Appellant,

v.

Russell **LEIDHOLM,** Defendant and Appellee.

Civ. No. 910414.

Supreme Court of North Dakota.

July 28, 1992.

Carol Ronning Kapsner of Kapsner and Kapsner, Bismarck, for plaintiff and appellant; appearance by Cindy Blotske.

Richard B. Baer, Bismarck, for defendant and appellee; appearance by Russell Leidholm.

LEVINE, Justice.

Cindy Blotske, formerly Cindy Leidholm, appeals from an amended judgment of the district court changing custody of her youngest daughter, Jessica, to Jessica's father, Russ Leidholm. We reverse and remand.

Russ Leidholm and Cindy Blotske were divorced in January 1988. At that time, they had three minor children: Jessica, 2, Dawn, 16 and Michelle, 17. Relying on the parties' stipulation, the district court granted physical custody of Dawn and Michelle to Russ and physical custody of Jessica to Cindy "subject to reasonable visitation ... at reasonable times and places and upon reasonable notice...." In March 1989, Russ moved the district court to establish a visitation schedule but the record does not indicate how or if the matter was resolved. Russ remarried in October 1989. In May 1990, Russ accused Cindy of child neglect and moved to transfer Jessica's custody to him. Russ later dropped the motion.

Cindy remarried in 1991 and moved from Bismarck to Selfridge. In the spring of 1991, Russ, Dawn and Michelle filed three separate complaints with the Burleigh County Social Services, alleging that Cindy neglected Jessica and that Cindy's husband, Jim Blotske, sexually abused Jessica. A social services team concluded the allegations were "unsubstantiated." In June 1991, Russ again moved to change custody of Jessica. In September 1991, Russ amended his motion to request that, in the alternative, the district court establish a regularized fixed visitation schedule. A two-day trial was held.

On November 18, 1991, the district court ordered Jessica's custody transferred to Russ. After finding several changed circumstances, the district court applied the factors of NDCC § 14-09-06.2, and found that it was in Jessica's best interests to change her custody. A stay was granted pending this appeal.

On appeal, Cindy asserts that the district court order changing custody is clearly erroneous. She argues that none of the changed circumstances requires, in the best interests of Jessica, that custody be changed. We agree.

■ There is an "aversion" to changing the custody of a happy child who has been living with one parent for a substantial time. See Silseth v. Levang, 214 N.W.2d 361 (N.D.1974). In Von Bank v. Von Bank, 443 N.W.2d 618 (N.D.1989), a custody modification proceeding, we rejected the argument that the court "should protect children and their vital relationship with their primary caretaker and adopt the primary caretaker rule." We explained that even if we were to adopt such a rule, it was unnecessary to do so in a modification proceeding because maintaining the stability of the custodial parent-child relationship was already insured and protected by considerations of finality. Id. at 620–21. These considerations of finality "already guard against modification of a prior custodial decree 'without a showing of a significant need for doing so.'" Id. at 621, quoting Wright v. Wright, 431 N.W.2d 301, 303 (N.D.1988). See also Heinen v. Heinen, 452 N.W.2d 331 (N.D.1990). Our cases thus reflect a preference for maintaining the custodial status quo by requiring a "compelling" or "significant reason" before ordering a change of custody. Orke v. Olson, 411 N.W.2d 97 (N.D.1987), Wright, supra; Starke v. Starke, 458 N.W.2d 758 (N.D.App.1990). The party seeking a change of custody must establish a significant change in circumstances which either "requires" [Lapp v. Lapp, 336 N.W.2d 350 (N.D.1983)] a change of custody for the child's best interests or "fosters" [Ebertz v. Ebertz, 338 N.W.2d 651 (N.D.1983)] or "serves" [Ludwig v. Burchill, 481 N.W.2d 464 (N.D.1992)] the child's best interests. The significant change in circumstances must so adversely affect the child that custody should be changed. Gould v. Miller, 488 N.W.2d 42 (N.D.1992). One of the most beneficial byproducts of protecting custodial stability in custody modification proceedings is its deterrent effect on continuous litigation of custody which, left unchecked, generates cruel emotional and economic strain on all participants to the ultimate detriment of a child's best interests. In any change of custody proceeding, the important factor is the "stability of the child's relationship with the custodial parent." Orke v. Olson, supra. See, e.g., Silseth v. Levang, supra; Lapp v. Lapp, supra.

■ A trial court's decision to modify custody is a finding of fact subject to the

clearly erroneous standard of review. *Wright v. Wright, supra.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.; see* NDRCivP 52(a).

The district court found significant changes in circumstances because of Cindy's interference with visitation by Russ and extended family members. In changing Jessica's custody, the trial court emphasized that Russ would provide Jessica with a loving family, including Ms. Leidholm's children, Jessica's siblings, as well as other members of Jessica's extended family.

 It is apparent that the visitation problems in this case are longstanding. Russ made a motion for structured visitation soon after the divorce and, more recently, included in his change-of-custody motion a request for structured visitation. Visitation between a child and her noncustodial parent is presumed to be in the best interests of the child. *Dschaak v. Dschaak*, 479 N.W.2d 484 (N.D.1992). Visitation is not only a privilege of the noncustodial parent, but also a right of the child. *Id.* at 487. Only when visitation "is likely to endanger the child's physical or emotional health," may it be withheld. *Id.;* NDCC § 14–05–22(2).

 Having recognized and acknowledged the importance of the noncustodial parent's visitation privilege, we have also emphasized that frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody. *E.g., Ebertz v. Ebertz, supra; Miller v. Miller*, 305 N.W.2d 666 (N.D.1981); *Muraskin v. Muraskin*, 283 N.W.2d 140 (N.D.1979); *accord, e.g., Crippen v. Crippen*, 508 So.2d 1339 (Fla.App. 4 Dist.1987); *Calabrisi v. Boone*, 470 So.2d 1255 (Ala.Civ.App.1985). Before visitation problems justify changing custody, there must be a finding that the visitation problems had worked against the child's best interests. *E.g., Miller, supra.* In this case, while the district court found that Cindy's efforts to frustrate visitation, in effect, deprived Jessica of contact with loving family members, that deprivation is better remedied at first by resort to a more rigid visitation schedule, rather than a change of custody. We conclude that the visitation problems by themselves cannot be said to compel a change in custody and so we must look to the other factors the trial court found significant.

The trial court also found as significant changes of circumstances, Cindy's remarriage and her move from Bismarck to Selfridge. It then applied the factors in NDCC § 14–09–06.2 and concluded that a change of custody was in Jessica's best interests.

 We have said that in determining the best interests of a child in a change of custody proceeding, the trial court is to apply the factors in NDCC § 14–09–06.2. *E.g., Reede v. Steen*, 461 N.W.2d 438 (N.D. 1990). However, that application must be done within the constraints of a modification proceeding, as contrasted to an original custody proceeding. In an original custody proceeding, the fact finder is given free rein to weigh each factor as it deems fit, under no constraints (in the majority view) to assign one factor priority or give one factor more weight than another. A trial court making an original award of custody must determine the single issue of what is in the child's best interests. *E.g., Heinen v. Heinen, supra.* But a modification proceeding is different from an original custody award. In a modification proceeding, the best interests of the child must be gauged against the backdrop of the stability of the child's relationship with the custodial parent. *See, e.g., Orke v. Olson, supra; Silseth v. Levang, supra.*

 The trial court found that Jessica loves her mother but that evidence of the mother's love and emotional ties was sparse and that Russ had the greater capacity and disposition to give the child love, affection and guidance and to continue the education of the child. *See* NDCC § 14–

09–06.2(1)(b). Yet, at the same time, the trial court found that Jessica was a "normal, healthy, happy, six-year-old who loves her mother and who gets along well in school." It is perverse to determine that a child who is as healthy, happy and well adjusted as Jessica, is, nonetheless, wanting in love and disposition for affection from the mother who has had primary physical custody for nearly four years. While Russ' love and disposition for affection may exceed Cindy's, nonetheless, according to the trial court, "[n]othing in the evidence suggests that [Cindy] lacks the ability to fulfill her parental role"; that "Cindy is presently providing" Jessica with "food, clothing, medical care, and other material needs" and "that there is no substantial evidence that [Cindy] is not presently carrying out her parental responsibilities in an appropriate manner." If this were an original custody proceeding, the finding in favor of Russ would be well within the trial court's prerogative. But this is a change of custody proceeding. Accordingly, we are left with a definite and firm conviction that the trial court made a mistake.

The trial court also found the child had not been living in a stable environment and the desirability of maintaining the "current continuity" had not been established, whereas the Leidholm family unit was "of longstanding and ... more likely to continue as such in the future." *See* NDCC § 14–09–06.2(1)(d) and (e). The trial court also found that Russ' present wife was a "plus" in Jessica's life. The trial court discounted the allegations of sexual abuse against Cindy's present husband, noting they had not been proved and that "a significant number of the witnesses who testified against Mr. Blotske and against the mother had problems of their own."

In *Orke v. Olson, supra,* the trial court also opted in favor of the stability of the noncustodial home, failing to recognize that the important factor in weighing stability was not the stability of the custodial parent's relationship with a spouse, but rather the stability of the child's relationship with the custodial parent. Here, the trial court has made a similar mistake. It underestimated the impact of uprooting Jessica from her established custodial relationship and focused instead on the potential advantages of the noncustodial parent's home. *Cf. Miller v. Miller, supra* [potential advantages of change in custody must be weighed against uprooting child from established custodial arrangement]. The trial court, in effect, has misapplied the factor of continuity. It is the continuity of the custodial parent-child relationship that is critical, not the continuity of the stepparent-child relationship. Finding that Jessica is a "normal, healthy, happy, six year-old child who loves her mother and who gets along well in school" and who is "getting along well in Selfridge" belies the contradictory finding that maintaining the current continuity is not desirable. The trial court's finding that the child has not been in a stable environment minimizes the overriding significance of the "continuous and uninterrupted relationship that has been important" to Jessica's development as the happy, well-adjusted child the trial court found Jessica to be [*i.e.,* her relationship to her custodial parent]. *See, e.g., Starke v. Starke,* 458 N.W.2d at 761. We conclude that the district court's findings are clearly erroneous because they were induced by an erroneous view of the law.

The change in Jessica's custody leaves us with a definite and firm conviction that a mistake has been made. To overcome the problems with visitation, the district court should fashion an order that spells out a clear, specific and fair visitation schedule.

We reverse and remand.

MESCHKE, J., concurs.

VANDE WALLE, Justice, concurring specially.

I am in accord with the majority that "[o]ne of the most beneficial byproducts of protecting custodial stability in custody modification proceedings is its deterrent effect on continuous litigation of custody which, left unchecked, generates cruel emotional and economic strain on all participants to the ultimate detriment of a child's best interests." That statement is equally applicable to the continuous litigation

spawned as a result of a custodial parent's continued resistance to complying with the visitation rights given the noncustodial parent. The result is that the noncustodial parent must either forgo the right to visitation or must constantly seek the assistance of the court to enforce the visitation rights, thus defeating the deterrent effect which the statement in the majority opinion espouses.

This was an unusual case in which the mother's sisters testified against the mother and on behalf of the father in support of his motion to change custody. Despite my discomfort that we are in actuality retrying this matter rather than reviewing it under Rule 52(a), NDRCivP, I concur in the result reached by the majority opinion. I write separately, however, to elaborate on the matter of visitation or more precisely the violation of visitation provisions in a custody decree.

I agree with the majority that "frustration of visitation does not alone constitute a sufficient change in circumstances to warrant a change in custody," and that visitation problems are "better remedied at first by resort to a more rigid visitation schedule, rather than a change of custody." Nevertheless, as the majority also observes "[i]t is apparent that the visitation problems in this case are longstanding." In view of the "longstanding" visitation problems and our reversal of the change-of-custody order, my concern is that custodial parents and their attorneys will view our admonitions and those of the trial court that custodial parents must allow the ordered visitation to noncustodial parents as so much pretentious talk or, as Justice Sand described it *"bruten fulmen* (empty noise)." See *McCullough v. Swanson,* 245 N.W.2d 262, 265 (N.D.1976).

Incarceration for contempt of a visitation order by a continuous pattern of minor obstructions to visitation, for whatever purpose, would probably be greeted with public outrage. Thus, I fear that despite the protestations of the trial court and this court to the contrary, the prevailing wisdom is that frustration and violation of the visitation provisions will not result in a loss of custody, but, at the most, a tongue lashing from the trial court. Opinions such as the majority opinion foster that perception. In turn that perception is, I fear, largely responsible for an equally damaging perception that in matters of visitation the noncustodial parent (usually the father) does not receive evenhanded treatment in the courts.

Because, as the majority notes, "[v]isitation between a child and her noncustodial parent is presumed to be in the best interests of the child," we have indicated that continued frustration of the noncustodial parent's rights to visitation forms a part of the basis for a change of custody. *Muraskin v. Muraskin,* 283 N.W.2d 140 (N.D. 1979). Notwithstanding the " 'aversion' to changing the custody of a happy child who has been living with one parent for substantial time," I believe that a continued pattern of circumvention of visitation provisions may, in the appropriate case, "weigh against the child's best interests" such as to justify a change in custody. *Miller v. Miller,* 305 N.W.2d 666, 672 (N.D.1981). Nevertheless, I agree that until a rigid visitation schedule is implemented, with warning that any violations may result in a change of custody, the drastic remedy of a change of custody is not warranted. If that rigid visitation schedule is implemented and fails, either through egregious violations or a pattern of less significant but continued violations, such as to evidence an intransigent and contentious attitude toward the rights of the noncustodial parent, I would affirm an order changing custody as a result of those violations.

JOHNSON, J., concurs.

ERICKSTAD, Chief Justice, concurring in the result.

I concur in the result reached by the majority opinion, however I do so somewhat reluctantly.

This court has long recognized that, as a general proposition, "it is not in the best interests of a child to unnecessarily change custody and bandy the child back and forth between parents." *Ludwig v. Burchill,* 481 N.W.2d 464, 465 (N.D.1992); *Lapp v.*

*Lapp,* 293 N.W.2d 121, 128 (N.D.1980). With this in mind, we have said that before a change of custody is warranted, there must be a significant change of circumstances which weighs against the child's best interests. *Ludwig,* 481 N.W.2d 464. Thus, as the majority opinion notes, our cases reflect a preference for maintaining the custodial status quo.

However, my concern with the majority opinion is that it has over emphasized the importance we have previously accorded the continuity of the custodial parent child relationship. *See generally Von Bank v. Von Bank,* 443 N.W.2d 618 (N.D.1989). There is no doubt that preserving the continuity of the custodial parent child relationship is an important factor to be considered in child custody determinations. However, this concern should not weigh so heavily that a deep and meaningful inquiry as to the child's best interests is forestalled under the guise of preserving the continuity of the custodial parent child relationship.

In this case, the trial court was not convincing in its findings regarding what specific circumstances warranted a change of custody. The trial court discounted allegations of past sexual abuse on the part of Cindy's new husband Jim Blotske. Regarding testimony from Cindy's two sisters and her daughters to the effect that Cindy had been neglectful in her parental responsibilities, the trial court noted that the allegations appeared to be "reasonably accurate or at least were." The trial court noted that "[w]hile the evidence demonstrates [Cindy] has the ability [to carry out her parental responsibilities], it is less persuasive on the question of her disposition." The trial court also noted that "Jessica loves her mother but evidence regarding the mother's love and emotional ties to Jessica is sparse, at best." However, the trial court went on to find that "Jessica is a normal, healthy, happy, six year-old child who loves her mother and who gets along well in school" and that "there is no substantial direct evidence that the mother is not presently carrying out her parental responsibilities in an appropriate manner."

Had the trial court been less ambivalent in its findings and recognizing that the trial court is much better position to weigh and judge the credibility of witnesses, I would have voted to affirm.